## JAMES JORDAN v. SAMPSON JOHNSON.

1. REPLEVIN—*Rightful Possession—No Demand Necessary.* The gist of the action of replevin being the wrongful detention, if a person rightfully comes into the possession of personal property of which he is not the owner, his possession is not wrongful until a demand is made upon him for a return of it; but if a person comes into the possession of the personal property of another by his own wrong, and without the consent of and against the wish of the owner, he is wrongfully in possession of the property, and no demand is necessary.

2. ―――― *Incompetent Evidence.*   In an action in replevin, where the point in issue is the ownership of wheat, it is error to permit the introduction of testimony as to the means by which the plaintiff procured the judgment upon which the sheriff's deed was based under which he holds title to the land upon which the

wheat was raised. The title to the land is not in dispute. The action of replevin is to determine only the right of possession of personal property.

3. ——— *Erroneous Instructions.* Instructions to the jury that they would be justified in finding against the plaintiff upon such testimony are clearly erroneous and prejudicial.

4. TRIAL BY JURY — *Special Findings.* Either party has a right to prepare and ask the court to submit questions in writing to the jury, and if they are material and relate to some of the facts which the jury must determine in arriving at their verdict, the court must submit them to the jury, and insist upon clear and unevasive answers thereto.

5. REPLEVIN — *Redelivery Bond Admits Possession.* By executing a redelivery bond in a replevin action and procuring a return of the property thereunder, the defendant is estopped from denying his possession of the property at the commencement of the action.

MEMORANDUM.— Error from Cowley district court; M. G. TROUP, judge. Action in replevin by James Jordan against Sampson Johnson and John Johnson. Judgment for defendants. Plaintiff brings the case here. Reversed. The opinion herein, filed November 9, 1895, sufficiently states the facts.

*Pollock & Love,* and *S. D. Pryor,* for plaintiff in error.

*McDermott & Johnson,* for defendant in error.

The opinion of the court was delivered by

DENNISON, J. : This is an action in replevin brought in the district court of Cowley county, Kansas, by James Jordan, as plaintiff, against Sampson Johnson *et al.,* defendants, to recover the possession of about 270 bushels of wheat, which was the landlord's share of the wheat grown upon certain land in said county. Said Jordan claimed, by virtue of a sheriff's deed executed and delivered to him by the sheriff of Cowley county on September 26, 1886, to be the owner of the

land upon which the wheat was grown, and therefore entitled to the landlord's share of the wheat. Sampson Johnson claimed to be the owner of the wheat by virtue of the fact that he was the former owner of the land; that on or about July 1, 1889, he rented said land to the tenant who raised the wheat, and that Jordan had agreed with him that if he would let the home place sell, he should have as long time as he wanted to redeem the place and stay there. The evidence is undisputed that Sampson Johnson was the owner of the land until he lost it by the foreclosure proceedings, and that he resided on the premises until the 4th day of March, 1890, when he removed to another place six or seven miles distant. It is also undisputed that he leased the land to the tenant about the 1st day of July, 1889; also that Jordan became the owner of the land by sheriff's deed on September 26, 1889; also that the tenant sowed the wheat about November, 1889, and after the execution and delivery of the said sheriff's deed. Judgment was rendered for the defendant in the court below, and the plaintiff, James Jordan, brings the case here for review, and alleges seven assignments of error. An examination of the record in this case discloses an abundance of prejudicial error upon which this case must be reversed and a new trial must be had, and in deciding this case only those points will be considered which will probably arise in said new trial.

The plaintiff in error claims that the trial court erred in holding that any demand was necessary before the bringing of this action under the facts as shown by this record. There is a conflict of testimony in this case as to when the action was brought. The sheriff's return of the summons served shows that it was received by him at 9 o'clock A. M., on July

11, 1889.  It was claimed by the plaintiff that this indorsement was erroneous, and that it should have been 9 o'clock P. M.; and after the trial was had in this case he made a motion that the sheriff be allowed to correct his return to correspond with the facts. This motion was overruled by the court, and we think wrongfully so.  The return should certainly speak the truth, and if the sheriff was satisfied that he did not do so, he should have been permitted to correct his return so that it would speak the truth.  The evidence further shows that while this wheat was in shock, and also after a portion thereof was threshed, Sampson Johnson claimed this wheat as his own, and denied Jordan's ownership or right of possession to any of it, and said that it was his, and that he would take it unless stopped by an officer, and that he began hauling the wheat away about 3 o'clock in the afternoon of July 11, 1890, and at the time the summons was served upon him he had hauled away 99½ bushels of said wheat.

All the evidence in this case, even that of. the defendant himself, is to the effect that he claimed that he owned the wheat, and if he believed he owned the wheat, it is clear that, if a demand had been made upon him for it, he would have refused to give it up.

" Where a defendant in a replevin action places his defense upon title in himself and the right of possession incident thereto, and does not rely on want of demand by the owner, and it appears that the demand would have been vain and unavailing if made, no proof of demand and refusal is required." (*Raper v. Harrison*, 37 Kas. 243.)

We fail to see upon what principle of law a demand would be necessary in this case.  The gist of the action in replevin is the wrongful detention.  If the wheat belonged to Jordan and was raised upon his

land, of which Johnson was not in possession, and Johnson came and unlawfully and arbitrarily took the wheat, he certainly was in the wrongful possession of it. If, on the contrary, Johnson was the owner of the wheat, he was entitled to the possession of it, and he could defeat this action because he was the owner of it, and would not have to rely upon the failure of Jordan to make a demand upon him for it. The gist of the action of replevin being the wrongful detention, we apprehend that if a person rightfully comes into possession of personal property of which he is not the owner, his possession is not wrongful until a demand is made upon him for a return of it; but that, if a person comes into the possession of the personal property of another by his own wrong and without the consent of and against the wish of the owner, he is wrongfully in possession of the property, and no demand is necessary. In this case the court gave the following instruction :

"A demand is prerequisite to an action of replevin. This demand must be made before the commencement of the action, and no mere statement of the defendant that he intended to take possession of the property, made after the commencement of the action, will excuse the plaintiff from making the demand."

This instruction was erroneous and prejudicial to the rights of the plaintiff. During the trial of this case the court, over the objection of the plaintiff, permitted the defendant to testify to transactions and conversations had between this plaintiff and defendant about the matters that led up to the procuring of the sheriff's deed by which this plaintiff held title to the land. The defendant was permitted to testify that there was about $9,500 in mortgages against the farm; that a portion of them had been renewed by other mortgages; that Jordan had kept both the

original mortgages and the renewal mortgages, and foreclosed all of them, and that he only owed, all told, between $4,000 and $4,400; that Johnson had deceived him, and had judgments rendered against him for the $9,500, and that he had bought the place in for $100, and still held a judgment over him for about $9,500; that Jordan had agreed to buy in the land and deed it back to him; that he would let him have as long time as he wanted to redeem the place in, and stay there. He was also permitted to testify that Jordan had robbed him of everything he had; did it by deceiving him, told him there was only one place to be sold, and much other testimony along the same line.

Upon an examination of the record it would be clear to a novice that this testimony was highly prejudicial to the plaintiff, and that it greatly influenced the jury, and in fact influenced the judge himself. The question to be decided in this case was, who owned the wheat, and not who owned the land. The title to the land was not in question. The evidence admitted might have been proper under a motion to set aside the sale, or upon a suit to set aside the deed, but certainly not in deciding the title to this wheat. Along this same line, the court gave the jury the following instruction, as the law for them to follow in arriving at their verdict in this case :

" The plaintiff claims that he was the lawful owner of this wheat at the time of the commencement of this action, because that prior to the sowing of this wheat and prior to its harvesting he became the owner of the land upon which it grew, by virtue of a certain sheriff's deed based upon proceedings had in this court. If you should be satisfied by a preponderance of the evidence that the plaintiff did, in a lawful way and without any unlawful wrong or deceitful practice on his

part, in good faith buy this land at the time when the
proof shows he did buy it, and he afterward obtained
this sheriff's deed, then he would be the lawful owner
of this wheat.    The defendant claims that, notwith-
standing the fact that this plaintiff did buy this land
in these proceedings, yet he is not the lawful owner
of this wheat because, first, that the plaintiff wrong-
fully and unlawfully and deceitfully misled him in
these proceedings, and that by reason of the wrong and
deceit upon him he obtained that sheriff's deed at an
earlier time than he otherwise would have done, and
therefore he ought n't to be heard to say now that he is
the lawful owner of the wheat ; and, second, the defend-
ant claims that at the time and during the progress
of these proceedings this plaintiff made an agreement
with him that if he would permit certain things to be
done in that suit without defense, he would permit
the defendant to hold possession of these premises as
long as he wanted upon certain conditions, and that
by reason of that agreement he became the tenant of
Jordan, and that he is therefore entitled to this wheat
crop.    If you are satisfied by a preponderance of the
evidence that Jordan did practice any deceit or de-
ception or fraud of any kind in and about that matter,
then he ought not to have the fruits of that litigation
at all.    Whenever a man wrongfully invokes the proc-
ess of this court and obtains any judgment or other
things by any deceit or fraud, he, as a punishment
for that deceit and fraud, ought not to be heard to
say that he has afterward profited by a process of this
nature ; in other words, if the law finds a man doing
a wrong, deceitful, fraudulent or dirty thing, the law
leaves him where he is, and won't aid him in any mis-
fortune he gets into under that scheme.    In this case,
if you believe he practiced fraud and deception upon
Johnson, you would be justified in returning a verdict
against him in this case for that reason alone ; so,
also, if you believe from a preponderance of the evi-
dence that Jordan agreed, in consideration of the fact
that Johnson would n't make a defense in that suit,
and permitted him to carry on these proceedings to

his own advantage; agreed to permit Johnson to remain in possession of that place, then he would be entitled to the possession of this wheat crop; his agreement to refrain from a defense in that suit would be sufficient consideration to uphold the promise on the part of Jordan that he would permit him to remain in possession of these premises there and harvest this crop.''

We think no comment on these instructions is necessary, for the reasons above stated, and for the further reason that the uncontradicted evidence in this case is, that Johnson moved off from this land on the 4th day of March, 1890, and that Jordan tried to get him to stay on the land and work the land as his tenant, and he refused to do so.

The court below committed error in refusing to submit special questions asked for by the plaintiff. The special question, No. 6, asked for by the plaintiff was as follows :

''6. Was there any contract between the plaintiff and defendant Sampson Johnson giving said Johnson any interest in the premises upon which the wheat in question was raised, after the sheriff's sale to plaintiff? Yes.''

Questions 7 and 8, which were asked for by the plaintiff and refused by the court, read as follows :

''7. If the jury answer the last-above question in the affirmative, they will here state fully what said contract was, and when made.

''8. If the jury answer question 6 in the affirmative, they will state what consideration defendant paid plaintiff for the same, if any.''

Questions 12, 13, and 14, asked for by the plaintiff and refused by the court, are as follows :

''12. What right, if any, had the defendant, Johnson, to one-third of the wheat, grown upon the land conveyed to plaintiff by sheriff's deed, introduced in

evidence in this cause, harvested upon said land in the summer of 1890?

"13. If the jury find from the evidence that Sampson Johnson, the defendant, on the 11th or 12th of July, 1890, was entitled to the possession of $236\frac{1}{2}$ bushels of wheat in controversy in this case, they will here state why he was so entitled to said wheat.

"14. Was there any agreement in writing between plaintiff and defendant concerning said land after sale of same to plaintiff?"

These questions were material, and are questions which the jury must have determined in arriving at their verdict. The plaintiff had a right to have them answered, and the court had no discretion to refuse to give them.

The court also erred in refusing to return the jury and instruct them to answer more definitely and specifically questions 4 and 5. Question 4 is as follows:

"4. Was the wheat in question raised on the premises owned by the plaintiff? Ans. Yes; if it was not obtained by fraud."

It is not clear whether they stipulate as to the wheat being obtained by fraud, and if it was obtained by fraud it was not raised on the premises, or whether they mean if the premises were not obtained by fraud. The title to the premises was not the question to be determined in this action, and it was the duty of the jury to return a definite answer to this question. Question 5 reads as follows:

"5. What interest did defendant Johnson have in the premises on which the wheat was raised after the execution and delivery of the sheriff's deed offered in evidence in this cause? Ans. Possession."

Question No. 5, submitted by the defendant, was as follows:

"5. Did the defendant, Johnson, have the posses-

sion of the wheat at the time the plaintiff commenced this action?" The jury answered, "No."

It is a little difficult to understand how the defendant could have possession of the premises upon which the wheat was raised and was located and not have possession of the wheat. The testimony of the defendant, Johnson, himself was that he moved off from said place on the 4th day of March, 1890, and the plaintiff clearly had a right to know what the jury meant by answering interrogatory No. 5, submitted by the plaintiff, saying that his interest in the premises was possession.

The question was raised in this case that Johnson did not have possession of the wheat at the time the suit was brought. This question is eliminated from this case by the fact that he gave a redelivery bond, and the wheat was returned to him by the sheriff. By this he is estopped from denying possession at the commencement of the action. The statutes provide that if an undertaking be executed to the plaintiff "to the effect that the defendant will deliver the property to the plaintiff, if such delivery be adjudged, and will pay all costs and damages awarded against him, the sheriff will return the property to the defendant." The defendant cannot be permitted to give an undertaking for the *return* of property, and thereby have it returned to him by the sheriff, and then be heard to say that the property was not in his possession at the commencement of the action.

Because of the numerous and manifest errors committed at the trial of this case in the court below, the judgment of the district court will be reversed and the cause remanded for a new trial.

All the Judges concurring.