THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. JOSEPH T. DICKERSON.

No. 94.

1. EXCESS FARE—*Failure to Keep Ticket Office Open.* When the railroad company fails to keep its ticket office open as required by paragraph 1325 of the General Statutes of 1889, it cannot demand, charge or receive from a passenger more than the regular fare of 3 cents per mile, and the company or its employees have no right to expel him from the train for refusing to pay more.

2. ———— *Invalid Rule of Company.* A rule of a railroad company which requires a passenger either to pay an amount in excess of the highest amount that can be legally charged for his passage or be expelled from the train is not a valid rule.

3. ———— *No Funds for Excess Fare.* Where an illegal excess fare is demanded from a passenger and he does not have the amount demanded, he cannot avoid being expelled from the train by paying the illegal excess fare.

4. SPECIAL FINDINGS — *Refusal not Error When Immaterial.* Where special questions are furnished by a litigant, with a request to the judge to submit them to the jury, if they are immaterial and the facts sought to be determined need not be passed upon by the jury, either because they do not relate to the issues raised or are uncontradicted, and are necessarily included in the general verdict, it is not error to refuse to submit them to the jury for answers.

5. ———— *Properly Refused.* The court does not err in refusing to require the jury to find the amount allowed the plaintiff for

mental suffering, when it has instructed them that they cannot allow the plaintiff anything for mental suffering except such as grows directly from and is the result of the physical pain and suffering endured.

6. TRIAL—*Improper Remarks of Counsel.* When counsel for both sides of a case make improper statements to a jury in the argument of a case, the plaintiff in error should repudiate the improper statements of its counsel before objecting to the statements of the counsel for the opposite party.

7. EJECTMENT FROM TRAIN—*Damages not Excessive.* A verdict of $296.34 for damages for labor and inconvenience, physical and mental pain and suffering, and humiliation, upon such a state of facts as is shown in this case, is not excessive.

MEMORANDUM.—Error from Marion district court; FRANK DOSTER, judge. Action by Joseph T. Dickerson against The Atchison, Topeka & Santa Fe Railroad Company to recover damages for being ejected from a train. Judgment for plaintiff. Defendant brings the case to this court. Affirmed. The opinion herein was filed July 15, 1896.

The statement of the case as made by DENNISON, J., is as follows:

This is an action brought in the district court of Marion county by Joseph T. Dickerson against the Atchison, Topeka & Santa Fe Railroad Company, to recover damages alleged to have been sustained by him by being unlawfully ejected from a train operated by said company on August 6, 1890.

Dickerson went to the depot of the railroad company in Hillsboro, about 20 or 30 minutes prior to the departure of the train which ran from there to Marion, and, not finding the ticket window open at any time thereafter prior to the departure of the train, he got aboard said train for the purpose of riding to Marion. The distance was about 10 miles and the regular fare was 31 cents. When the conductor came to Mr.

Dickerson and asked for his ticket, Mr. Dickerson gave him the 31 cents. The conductor demanded 10 cents excess. Mr. Dickerson told him he could not pay him 10 cents, and one witness testified that Mr. Dickerson told him he could not pay him as he did not have the money. Mr. Dickerson testified that he did not remember whether he explained to the conductor that he did not have money enough, but that as a matter of fact he had only 8 cents remaining after paying the 31 cents fare. The conductor stopped the train about two miles from Hillsboro and eight miles from Marion, and laid his hand upon Mr. Dickerson's arm and led him from the car, and, putting his hand against his shoulder, pushed him off the train. There is no claim that unnecessary force was used in ejecting him from the train. Dickerson walked most of the way into Marion and the next day brought this suit. During the trial the judge gave, among others, the following instructions:

"A. Where a railroad company keeps in its depot or station building a particular place for the sale of tickets, separate from places for the transaction of other business, as an opening in a particular wall, and designates such place by some appropriate sign, as 'tickets' or 'ticket window,' or by general custom or habit uses such opening or other place for the sale of its tickets, a passenger has the right to apply at such place for his ticket and to rely upon procuring it there, and where such opening or place is closed so that application for tickets cannot be made there, and there is no other place generally and customarily used by the public or advertised by the company as a place to procure tickets, or known to the passenger in question as a place for procuring tickets, and no agent in or about the waiting-room of such depot or station building ready upon call to sell tickets, or who responds to a call for a ticket, such ticket office is not open or kept open within the meaning of the law.

"B. Hence, if you believe from the evidence in this case that the Hillsboro station on defendant's line of road, on the day the plaintiff got on the defendant's train, did not keep its ticket office open in some of the manners and for the time hereinbefore stated, so that the plaintiff was unable to purchase a ticket before entering the cars, the defendant's employes had no right to demand an excess fare from him or to expel him from the cars for refusing to pay it.

"C. If a person is wrongfully expelled from a railroad-train he is entitled to recover all damages he has actually sustained, such as loss of time consequent thereon, the labor, inconvenience, and expense, if any, incident to traveling at another time or by other modes of conveyance to the place he was endeavoring to reach, for the physical pain endured by him in being exposed to the heat of the sun and force of the elements, and such mental suffering as grows immediately out of or results directly from such physical pain, and also such damages as will compensate for the suffering of outraged and humiliated feelings natural to a man who is compelled to submit to such indignity in such a public place.

"D. Hence, in this case, if you believe from the evidence that plaintiff is entitled to recover at all, he should be allowed, as a matter of right, to the compensation for the labor and inconvenience, delay and loss of time in being compelled to go to his destination at another time and by other modes of conveyance, for the physical pain endured by him, which resulted from exposure to the heat of the sun after his expulsion, and such mental suffering as resulted directly from such physical pain, and also upon such humiliation and degradation as were imposed upon him by being compelled to leave the train under the imputation publicly cast upon him of having refused to pay his fare, or having violated the relations of passenger and carrier between himself and the company; but, of course, if any of these items or elements of damage have not been proved by the plaintiff, or are not naturally and logically deducible from the act of expul-

sion, with its attendant circumstances, nothing can be awarded for the same.''

The court refused to give the following instructions which were requested by the defendant below:

'' 1. I instruct you to return a verdict in favor of the defendant.

'' 2. If you find from the evidence that the plaintiff on the train refused to pay more than 31 cents to defendant's conductor for transportation from Hillsboro to Marion, and that the plaintiff had enough money, or might have conveniently obtained enough money, to pay 41 cents, you must return a verdict in favor of the defendant.

'' 3. If you find from the evidence that the plaintiff refused to pay more than 31 cents to the conductor of defendant for transportation from Hillsboro to Marion, and the plaintiff did not have 41 cents with him, or could not conveniently obtain it, but that he did not inform the conductor that he did not have the 41 cents, and that the conductor would have permitted plaintiff to ride if such an explanation had been made, then you must return a verdict in favor of the defendant.''

'' 5. You cannot allow plaintiff any damages on account of any discomfort, inconvenience or loss he may have suffered through his own acts or designs, if you should find a verdict in his favor.''

'' 7. You cannot allow plaintiff anything, if you should find in his favor, on account of mental pain or suffering.''

'' 9. If you find from the evidence that the plaintiff could have purchased a ticket during the half-hour prior to the departure of the train, by applying to the agent for it, then it was his duty on demand of the conductor to pay 41 cents for transportation from Hillsboro to Marion, and for failure to pay the 41 cents the conductor had a right to require the plaintiff to leave the train when it was stopped.

'' 10. If you should find from the evidence that plaintiff did not make a genuine effort in good faith to

purchase a ticket prior to the departure of the train, then defendant had right to collect from him 41 cents upon the train for transportation from Hillsboro to Marion, and upon plaintiff's refusal to pay said amount the defendant had a right to eject plaintiff from train, when it was stopped.

"11. The burden is upon the plaintiff to establish every material fact in the case by a preponderance of the evidence, and if he fails to do so your verdict must be for the defendant.

"12. In considering this case, you must not be influenced by any bias, passion, or prejudice, but must render a verdict based upon the evidence, under the instructions, and unaffected by any bias, prejudice, or passion.

"13. You must not, in arriving at a verdict, be swerved from fair and impartial action by the fact that the defendant is a railroad corporation.

"14. The defendant has a right to sell tickets over the counter at the south side of the office, at its own option.

"15. In order to have the office open for the sale of tickets, it was not necessary that the small window should be open, but it was sufficient if the agent was on hand ready and willing to sell tickets over the counter at the south side of the office.

"16. I instruct you that the station-agent had the office open for the sale of tickets if he was in the office or at hand and accessible and ready and willing to sell tickets. .

"17. If you should find from the evidence that tickets were sold to other persons at the office for the train in question, then you must consider it as established that the office was open for the sale of tickets when such sales were made."

The court also refused to submit to the jury the following special findings of fact : -

"1. Was an unnecessary force used by defendant's conductor in expelling plaintiff from the train?"

"4. Did not plaintiff have exactly 31 cents in his

hands ready to tender the defendant's conductor before the latter asked him for tickets or fare?

"5. Did not the defendant's conductor act in a gentlemanly and civil manner towards the plaintiff?

"6. If you answer the last question in the negative, state in what particular the defendant's conductor did not act in a gentlemanly and civil manner towards the plaintiff.

"7. Was not the manner and demeanor of the defendant's conductor toward the plaintiff civil and courteous?

"8. If you answer the last question in the negative, state in what particular and manner the demeanor and manner of defendant's conductor towards the plaintiff was not civil and courteous.

"9. Did not the defendant's conductor act patiently towards plaintiff, and give him ample time and opportunity to pay the 41 cents fare?

"10. How far from Hillsboro was plaintiff ejected from the train?

"11. Did not plaintiff begin suit against defendant the next day after the ejection, without making any request of the defendant for compensation or damages?

"12. Did not plaintiff require and insist upon defendant's conductor to use some force in ejecting plaintiff from the train?

"13. Did not Klossen purchase a ticket of defendant's station-agent at the grating over the counter about half an hour before the departure of the train?

"14. Was not the door unlocked in the doorway leading from the small room adjacent to the counter during the half-hour prior to the departure of the train?"

"17. Did the station-agent pass through the sitting-room while the plaintiff was in said room?

"18. Did the plaintiff see the station-agent outside on the platform four or five times, at any time before the departure of the train?"

"20. On August 6, 1890, and prior thereto, were not some tickets sold over the counter on the south side of the office?"

"23. If you find in favor of plaintiff, state whether

you allow him anything for mental pain or suffering.

"24. If you answer the last question in the affirmative, state what amount you allow him for mental pain and suffering.

"25. If you find in favor of plaintiff, state whether you allow him anything for punitive damages.

"26. If you answer the last question in the affirmative, state how much you allow the plaintiff for punitive damages.

"27. If you allow plaintiff anything for punitive damages, state upon what facts you base such allowance.

"28. If you find in favor of plaintiff, state whether you allow him any more damages on account of his walking about seven miles toward Marion than if he had walked back to Hillsboro and then rode by rail or otherwise to Marion.

"29. If you find in favor of the plaintiff and answer the last question in the affirmative, state the amount of such extra allowance of damages referred to in that last question.

"30. Prior to August 6, 1890, is it not a fact that only a portion of the tickets sold at Hillsboro station were sold through the little window?

"31. Prior to August 6, 1890, is it not a fact that a portion of the tickets sold at Hillsboro station were sold over the counter at the south side of the office?"

A verdict was returned and judgment rendered for Dickerson for the sum $296.34 and costs. The railroad company brings the case here for review.

*A. A. Hurd*, and *Stambaugh & Hurd*, for plaintiff in error.

*Keller & Dean*, for defendant in error.

The opinion of the court was delivered by

DENNISON, J.: The first error complained of by the plaintiff in error is that the court erred in giving the jury the instructions marked A, B, C, and D. Para-

graph 1324 of the General Statutes of 1889 provides that no railroad company shall charge or receive a rate in excess of 3 cents per mile for transportation of a passenger.   Paragraph 1325 *id.*, which was in force from February 25, 1886, until its repeal on April 5, 1893, provided that, when a passenger failed or neglected to procure a ticket prior to taking passage on a train, the company might lawfully charge 10 cents excess for a journey of 15 miles or less, etc.   Said paragraph also contains a proviso that said act shall not apply to any passenger taking passage on any railroad-train if the company shall fail or neglect to keep its ticket office open for the sale of tickets for at least 30 minutes immediately prior to the starting of such train.   A careful examination of the instruction marked "A" convinces us that it clearly lays down the law applicable to keeping open a ticket office, and, as the jury found generally for the plaintiff below, we must consider it as a settled fact that the ticket office at Hillsboro was not open for the sale of tickets at least 30 minutes, or any part thereof, immediately prior to the departure of the train on which Dickerson took passage on August 6, 1890.   It therefore follows that the provisions of paragraph 1325 *supra* did not apply to him, and that the company or its employees had no legal right to demand, charge or receive more than the regular fare of 3 cents per mile, or 31 cents, from him.   Did they have the right to expel him from the train for refusing to pay the 10 cents excess?   It must be conceded that he was not a trespasser upon the train.   He had paid the full legal fare.   He was therefore entitled to ride to Marion, and, being entitled to ride to Marion, the company or its employees did not have the right to expel him from the train for refusing to pay the excess.

23—4 KAN. APP.

This question will be more fully discussed under the objection to instructions marked " C " and " D."

The counsel for plaintiff in error object to that portion of instructions " C " and " D " which permits Dickerson to recover damages as a recompense for the suffering of outraged and humiliated feelings natural to a man who is compelled to submit to such indignity in such a public place. The contention is that this case comes within the rule that, when a conductor, in enforcing a valid regulation, in good faith and without unnecessary force, ejects a passenger from the train, the corporation is not liable for indignities and insults suffered. The conductor testified that the rule of the company is that if a passenger gets on his train and offers to pay cash fare he must pay the excess, whether he has a chance to buy a ticket or not, and, if he does not pay it, the conductor must remit it himself, or put the passenger off. We are not called upon to decide as to the validity of that part of the rule which requires the conductor to remit the excess himself. We do decide that a rule of a railroad company which requires a passenger either to pay an amount in excess of the highest amount that can be legally charged for his passage or be expelled from the train is not a valid rule.

It is also contended that Dickerson could have escaped the humiliation and indignity by paying the excess, and then his measure of damages would be 10 cents ; that he had no right to aggravate the damages by not complying with the demand of the conductor. We are not partial to a rule that would require a person to submit to an extortion for the purpose of relieving the extortioner from the natural consequences of his acts ; but we need not consider that in this case. The jury specially find that Dickerson did not have

money enough to pay the 10 cents excess. It was therefore not in his power to avoid being expelled from the train by paying the illegal excess fare demanded.

The instructions, "A," "B," "C," and "D," given were the law that governs this case, and no error was committed in giving them.

Plaintiff in error complains that the court erred in refusing to give the instructions asked for by it. We have carefully examined all the instructions given and those refused, and find that the material instructions asked for which should have been given are included in the instructions of the judge which were given to the jury.

The next error complained of is in the refusal of the court to submit certain special questions to the jury. In the case of *Jordan v. Johnson*, 1 Kan. App. 656, this court has held that

"either party has a right to prepare and ask the court to submit special questions in writing to the jury, and if they are material and relate to some of the facts which the jury must determine in arriving at their verdict, the court must submit them to the jury and insist upon clear and unevasive answers thereto."

We have carefully examined the special questions refused, and find that all of them, except 23, 24, 25, 26, and 27, are either immaterial, and the jury need not pass upon them in determining the amount of their verdict, or the facts which must have been determined by them were uncontradicted and were necessarily included in the general verdict. As to the special question No. 23, the jury by answering No. 22, must have answered No. 23, which they do by stating that one of the elements of damages included in their verdict is for "physical and men-

tal suffering and humiliation." No. 24 asks the jury to separate the amount they allow for mental pain and suffering from the amount they allow for physical pain and suffering. The court instructed the jury that they could not allow the plaintiff anything for mental pain and suffering, except such as grows immediately out of or results directly from the physical pain he endured. It could therefore serve no good purpose to require the jury to separate the damages allowed for physical and mental pain and suffering when they cannot allow anything for mental pain and suffering except such as is so closely connected with the physical pain and suffering.

In this case, the plaintiff below must recover, if he recover at all, for the labor and inconvenience to which he was put, for the physical and mental pain and suffering endured by him, and for the humiliation to which he was compelled to submit. If requested, the court should have submitted questions as to how much is allowed for each one of these elements of damage, but we can see no good reason for requiring any one of these three elements of damage to be divided up into minor subdivisions.

As to Nos. 25, 26, and 27, the court had instructed the jury, that they could not allow the plaintiff anything for punitive or exemplary damage, and their answer to No. 22 shows that they followed this instruction. We think the court committed no error in refusing to submit the special questions above mentioned.

The plaintiff in error also complains that the attorney for the plaintiff below was guilty of misconduct in his argument to the jury. We have carefully examined the arguments made, and are of the opinion

that both sides took considerable latitude in the argument to the jury. Both sides tried to prejudice the jury against the opposite party. The plaintiff below called attention to the claim that Dickerson had tried to put up a job on the company, and that, if it was not true, they should decide against it because it had slandered him. The attorney for the company frequently called the jury's attention to the fact that when Dickerson was put off the train he was parading around wearing a hundred-dollar diamond pin. There is nothing in the record which authorizes either statement. The plaintiff in error, before objecting to the statements of counsel for the defendant in error, should have repudiated the improper statements of its own counsel. (*The State v. Mortimer*, 20 Kan. 93.) A verdict of $296.34 for the damages, for labor and inconvenience, physical and mental pain and suffering, and humiliation, upon such a state of facts as is shown in this case, is not excessive.

Perceiving no material error prejudicial to the rights of the plaintiff in error, the judgment of the district court is affirmed.

All the Judges concurring.