**FIRST STATE BANK OF BLANCHARD v. ARMSTRONG et al.**

No. 16706—Opinion Filed June 22, 1926.

Rehearing Denied Sept. 7, 1926.

**1. Chattel Mortgages—Continuing Security for Renewal Note.**

Where a bank holds two notes of a debtor, each secured by a chattel mortgage containing the clause, "This mortgage is intended and shall be held and construed to be as and for the security of the second party so long as the second party may be in any manner interested in the payment of the indebtedness hereby secured or any part thereof," and thereafter another note is executed for the indebtedness and the original notes stamped "paid," and delivered to the mortgagor, the mortgages are not thereby extinguished in the absence of an agreement to that effect.

**2. Same—Replevin by Mortgagee—Defendant Estopped by Giving Redelivery Bond.**

Where, in a replevin action, the defendant, upon service of summons and the order of replevin, executes a redelivery bond, he thereby admits that he is in possession of the property, and he and his sureties on the redelivery bond are estopped from setting up the defense that the property had been sold at foreclosure sale of another mortgage prior to the commencement of the action.

**3. Appeal and Error—Sufficiency of Record —Trial on Stipulated Issues.**

When the parties in open court stipulate the issues to be tried, and trial is had upon the issues as stipulated, the appeal will not be dismissed for failure to incorporate the pleadings in the case-made where the parties had due notice of the settling and signing of the case-made, and no objections were made or amendments suggested.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action by First State Bank of Blanchard against I. N. Armstrong and others. Judg-

ment for plaintiff against I. N. Armstrong, and against the plaintiff as to the other defendants, and plaintiff appeals. Remanded, with directions.

McKeown & Green, for plaintiff in error.

C. Guy Cutlip and Thos. J. Horsley, for defendants in error.

Opinion by RAY, C.  Upon a service of writ of replevin in an action by the First State Bank of Blanchard, the defendant I. N. Armstrong gave a redelivery bond with W. A. Armstrong, J. H. Robertson, B. E. Joptal, F. L. Huston, T. T. McAnally, and A. W. Armstrong, as sureties, and thereafter filed answer.  At the time the case was regularly set for trial, the defendant failed to appear either in person or by attorney, and judgment was for plaintiff.  Thereafter plaintiff commenced suit on the redelivery bond.  Thereafter the defendant in the replevin action filed his petition to vacate the judgment, upon the ground that his failure to appear for trial was caused by the court clerk notifying his attorney, who was a resident of another county, that the jury had been discharged and the case would not be called for trial.  The judgment was vacated, and the parties by their respective attorneys, in open court, stipulated that the replevin action and the action on the redelivery bond should be consolidated and tried together to the court without a jury, and that in the event the court should find that there was any sum due the plaintiff bank by Armstrong, defendant in the replevin suit, judgment should be rendered for that amount against the defendants in the suit on the redelivery bond.  The court found for the plaintiff bank, and against the defendant Armstrong, and entered judgment in the replevin action for the bank against the defendant Armstrong, in the sum of $302.88 and interest, and $25 attorney's fee, but refused to render judgment against the sureties on the redelivery bond, defendants in the other case.

The only complaint of the plaintiff bank in its appeal is that the court erred in refusing to render judgment against the sureties on the redelivery bond as per stipulation.

The facts are that in the fall of 1918, the defendant I. N. Armstrong, then a resident of McClain county, was indebted to the First State Bank of Blanchard, the indebtedness being evidenced by two promissory notes, each secured by a separate chattel mortgage.  After certain payments were made. the balance owing to the bank was included in one note of $287.50, executed by the defendant Armstrong to the bank.  At that time, or soon thereafter, the

original notes were stamped "paid," and delivered to Armstrong.

In December, 1918, Armstrong moved to Seminole county, and took the property described in the two mortgages with him. The mortgages were not filed for record in Seminole county.  In its petition filed in the district court of Seminole county June 2, 1920, the plaintiff bank alleged that the note of $287.50 was a renewal of the original notes secured by the two chattel mortgages, and by reason thereof it alleged a special ownership in the mortgaged property and entitled to possession.  Copies of the two mortgages and the note of $287.50 were attached to the petition as exhibits.  The defendant's answer was, first, a general denial, except as to certain admissions; second, an admission that plaintiff was a corporation; third, that the original notes and mortgages were executed by him to the bank, but that the two notes contained certain items of usury; fourth, that the original notes were fully paid, including the usury; that he did not sign the alleged renewal note of $287.50, and that if plaintiff held such a note it was a forgery.  The answer contained other allegations not necessary to a decision here.  To this answer plaintiff replied by general denial.

A prima facie case was made by plaintiff's evidence.  The defendant Armstrong testified that he paid the original notes, and that he did not sign the note of $287.50. The trial court found to the contrary, and no question is raised as to such finding.

The defendant Armstrong and certain of the sureties on the redelivery bond testified that in the spring of 1919 a representative of the plaintiff bank was in Seminole county for the purpose of looking after the mortgaged property, and when Armstrong exhibited to him the two original notes stamped "paid," he said there was something wrong, and left Seminole county without making any attempt to make collection or to take possession of the property; that when the summons and order of replevin were served on the defendant Armstrong, he again exhibited the notes stamped "paid," as evidence that the indebtedness had been fully paid, and the sureties were thereby induced to sign the redelivery bond.  Plaintiff's witnesses testified that the original notes stamped "paid" ought to have been retained by the bank until the renewal note was paid, but that a subordinate employee of the bank had given them to Armstrong inadvertently.

On this evidence the trial court found that the defendant Armstrong was indebted to the plaintiff bank for the amount of

the $287.50 note, interest, and attorney's fee, which was in effect a finding that the indebtedness for which the original notes were given had not been paid, and that the $287.50 note evidenced that indebtedness as testified by plaintiff's witnesses; but held that the indebtedness was not secured by the mortgages given to secure the original notes, and refused to enter judgment against the sureties on the redelivery bond.

The general rule sustained by the great weight of authority is as stated in State v. Lonewolf, 63 Okla. 166, 163 Pac. 532:

"A note executed for a balance due upon a previous debt or demand is not a payment or extinguishment of the original demand, nor of a chattel mortgage given to secure same and will not bar an action of replevin for possession of the property described in said mortgage after the maturity of said note."

In the instant case the mortgages contained this clause:

"It is expressly understood and agreed that any future transactions by which the first party may become indebted to the second party prior to full payment of indebtedness herein specified, are to be based upon this mortgage as security, and the same shall be so held and construed. This mortgage is intended and shall be held and construed to be as and for the security of the second party so long as the second party may be in any manner interested in the payment of the indebtedness hereby secured or any part thereof. * * *"

We therefore hold that the two mortgages secured payment of the $287.50 renewal note.

It is contended by the defendants in error that as the mortgages were neither witnessed nor acknowledged, they were not entitled to record and were void as to subsequent purchasers of the property. Unquestionably, that is a correct statement of the law where the property is purchased without notice. But this is a question between the original parties. No question as to innocent purchasers for value without notice is involved. It is true, as shown by defendant's evidence, that after Armstrong removed the mortgaged property into Seminole county, the mortgages were not filed in that county; that Armstrong mortgaged the same property to a bank in Seminole county, and that mortgage was foreclosed, and the property, or a portion of it, bought at the foreclosure sale by certain of the sureties on the redelivery bond before the plaintiff bank brought its replevin action for possession of the property, and that the defendant Armstrong did not have in his possesion any of the mortgaged property at the time suit was filed and the summons and writ of replevin were served, but by the execution and approval of the redelivery bond in the replevin action, possession of the property by the defendant Armstrong was admitted, leaving for trial the single question, that of the right of plaintiff to possession. The rule is that where a defendant in a replevin suit executes a redelivery bond and thereby regains possession of the property in controversy, he is thereby estopped from denying that he was in possession of the property at the time of the commencement of the action. Jordan v. Johnson (Kan.) 42 Pac. 415; Nye v. Weiss (Kan.) 53 Pac. 152; Boyce v. Augusta Camp, No. 7429, Modern Woodmen, 14 Okla. 642, 78 Pac. 322. In this case, however, the defendant did not regain possession of the property for the simple reason that he did not at the time have possession, but the sureties on the redelivery bond, or some of them, did have possession of a portion, if not all, of the property in controversy. But by the execution and approval of the redelivery bond and the officers' return thereon, the plaintiff was in law notified that further pursuit of the property was unnecessary, and that if it recovered judgment in the replevin action, the value of the property to the extent of plaintiff's interest therein would be forthcoming if the property could not be returned. For that reason the defendant and the sureties on the redelivery bond are estopped from denying plaintiff's possession and ownership the same as if the actual possession had been regained.

It is further contended by the defendants that the bank was estopped by its conduct from maintaining its action against the sureties. The conduct complained of was the delivery of the original notes to the mortgagor, stamped "paid," and the statement of a representative of the bank, after seeing the original notes in the possession of Armstrong, in substance, that there was something wrong with the bank's claim, and that by such conduct the parties were induced to sign the redelivery bond. Whatever statement was made by the bank's representative, or other conduct of the bank, which may have led the parties to believe the bank would not further attempt recovery of the property or collection of the debt, was several months prior to the commencement of the replevin action. Regardless of the impression made upon the parties by the statement and conduct of the bank or its representative, they were notified by the commencement of the replevin suit and the service of the summons

and writ of replevin that the bank was at that time asserting its right to take possession of the mortgaged property for the satisfaction of its debt. When the parties signed the redelivery bond they had actual knowledge that the bank was attempting to collect the debt and claimed the right of possession of the mortgaged property. The sureties were, therefore, not misled to their detriment, and the bank was not estopped.

It is further contended that the bank's appeal should be dismissed, for the reason that the case-made does not contain the pleadings in the suit against the sureties. It may be observed that it is not made to appear that any amendments were offered to the case-made as presented by the plaintiff. But a sufficient answer is that the parties stipulated that the two cases be consolidated and tried together, and that if it should be decided that any amount was due the bank from the defendant Armstrong, judgment should be entered against the defendant in the suit on the redelivery bond. The parties having stipulated in open court as to the issues to be tried, they thereby waived all questions as to the pleadings and removed such questions from the consideration of the court. The pleadings not being necessary to a decision of the case by the trial court, we think they are not necessary to a decision in this court; and, in the absence of any objections or suggestions of amendments to the case-made, at the time it was settled and signed, the appeal will not be dismissed.

For the reasons stated, the cause is remanded, with directions to enter judgment against the sureties on the redelivery bond as per stipulation of the parties

By the Court: It is so ordered.

Note.—See under (1) 11 C. J. p. 682 § 460. (2) 34 Cyc. p. 1595. (3) 4 C. J. p. 503 § 2262.