## DRUM STANDISH COMMISSION CO. v. FIRST NATIONAL BANK & TRUST COMPANY OF OKLAHOMA CITY.

No. 22588.    April 10, 1934.

Rehearing Denied May 22, 1934.

Affirmed.

H. W. Fielding, R. R. Brewster, and Fisher & Whitten, for plaintiff in error.

Wilson, Wilson & Owens and Young & Haste, for defendant in error.

BUSBY, J. This is an action in replevin in which two suits were consolidated in the court below and tried as one. It involves a dispute over the right to possession of 116 head of cattle between the holders of two chattel mortgages. The First National Bank & Trust Company of Oklahoma City, plaintiff in the trial court, claims under one mortgage and the Drum Standish Commission Company, intervener in the court below, claims under another. The owner of the cattle, Omar Power, disclaims any substantial interest therein. He was the defendant in the trial court. The trial of the case to a jury in the district court of Murray county resulted in a judgment in favor of the plaintiff for the possession of the cattle, and the intervener appeals. The parties will be referred to as they appeared in the trial court when not otherwise designated.

The principal question to be determined is whether the evidence supports the view that the intervener was charged with constructive notice of a prior mortgage lien in favor of the plaintiff. There are other primary questions presented by the brief, as well as questions subordinate to and included within the principal question above stated. These questions will be discussed as we proceed with the opinion. As a basis for such discussion we must review the material facts.

At the beginning of the sequence of events which terminated in this litigation, one Jesse C. Moore was the operator and owner of a cattle ranch which included about 14,500 acres of land. This land was divided into several tracts or pastures, some of which were separated from other portions of the ranch by intervening territory. These several pastures were situated in three different Oklahoma counties, to wit, Johnston, Murray, and Pontotoc. Each of the different pastures was known by an individual name. In order to avoid confusion we shall generally refer to the pastures by location.

The cattle involved in this controversy were a part of 1,035 head which were purchased in Texas by the rancher Moore in the fall of 1928. They were shipped from Texas in different lots and unloaded at Scullin in Murray county. Upon being unloaded they were placed in a Murray county pasture, where they were dehorned. After being dehorned, they, or at least a considerable portion of them, were taken to other pastures included in the Moore ranch. In connection with the distribution of these cattle the record is somewhat unsatisfactory. We find no definite evidence that any of the cattle were immediately taken to pastures located in Pontotoc county.

The purchase of the cattle in question was financed by the plaintiff, First National Bank & Trust Company (then known as the American First National Bank, in Oklahoma City). For that purpose the sum of $40,000 was advanced by the plaintiff to Moore, who, on November 14, 1928, executed and delivered to the plaintiff his promissory note for that sum payable on May 13, 1929. For the purpose of securing the payment of the note and such future advances as might be made by the plaintiff for the maintenance or transportation of the property mortgaged, the debtor Moore executed and delivered a chattel mortgage covering the 1,035 head of cattle bought in Texas. (The

sufficiency of the description in the mortgage to identify the property mortgaged or to constitute constructive notice to subsequent incumbrancers is challenged by the intervener. Details bearing upon this question will be reserved until the subsequent portions of this opinion.) This mortgage was filed in the office of the county clerk of Pontotoc county on November 15, 1928. Unquestionably the plaintiff at the time of filing this mortgage believed that the mortgaged chattels then were, or soon would be, located in Pontotoc county. However, apparently very few, if any, of the cattle covered by the mortgage were taken into Pontotoc county until April of 1929.

There is considerable conflict and confusion in the evidence as to the location of the cattle covered by the mortgage, but the record supports the view that some of the cattle included in the mortgage arrived in Pontotoc county in April, 1929, and that other groups of the same cattle were moved into Pontotoc county in June and July of 1929. The plaintiff introduced testimony tending to establish that about the last part of July or the first part of August, 1929, 534 head of cattle, including those involved in this litigation, were removed from pastures situated wholly or partially in Pontotoc county to a pasture in Johnston county known as Meadow pasture. On September 2, 1929, one Omar Power, defendant, purchased from Jesse Moore 600 cattle then situated in Meadow pasture, including the cattle involved in this suit. In making this purchase Power was financed by the Drum Standish Commission Company, intervener herein. Power, being indebted to the intervener for the sum of $37,488.55, executed his chattel mortgage to the intervener on the 600 head of cattle purchased by him to secure the payment of that debt. This mortgage was executed on September 3, 1929, and filed for record in Johnston county on the 5th day of the same month.

It is the claim of Drum Standish Commission Company that as a subsequent incumbrancer it was not charged with knowledge either constructive or actual of the prior mortgage of the plaintiff. The plaintiff, on the other hand, urges that the intervener was charged with constructive knowledge of plaintiff's mortgage at the time it acquired its mortgage interest in the property.

In this state constructive knowledge of the existence of a chattel mortgage is imparted to subsequent creditors, purchasers, and incumbrancers by filing the same in accordance with the provisions of section 11277, O. S. 1931, in the county where the property is situated at the time the mortgage is executed. However, if the property mortgaged is not located in the county where the mortgage is filed at the time of the execution and filing thereof, but is intended to be removed to such county and later becomes situated therein, the mortgage on file becomes constructive notice from the date of the arrival of the property within the county. In such case the mortgagee is not required to refile his mortgage after the arrival of the property. Mitchell et al. v. Guaranty Bank, 68 Okla. 110, 172 P. 47.

Assuming, as we must, in support of the verdict of the jury the truth of the plaintiff's evidence tending to establish that the cattle in question became situated in Pontotoc county in June and July of 1929, plaintiff's mortgage then on file in the office of the county clerk of that county served to charge subsequent purchasers and incumbrancers of the cattle which were situated in that county from the date of the arrival of the cattle in the county. After these cattle were removed from Pontotoc county in the latter part of July or the first part of August, the mortgage on file in that county continued to impart notice to subsequent incumbrancers acquiring liens upon the property within 120 days after the date of such removal. This by virtue of the provision of section 11279, O. S. 1931. The mortgage lien of the intervener acquired on September 3, 1929, was during the 120 day period.

In what we have said thus far in correlating the facts and the applicable rules of law we have assumed that the evidence introduced by the plaintiff had sufficient probative force to establish that the cattle in dispute became located in Pontotoc county. The intervener, however, challenges the sufficiency of this evidence. Counsel for intervener say in effect that the evidence introduced merely tends to establish that the cattle passed through Pontotoc county on their way from pastures in Murray county to pastures in Johnston county. That by reason of the distance between those pastures and the seasonal heat the cattle were halted temporarily in the Pontotoc county pastures. Counsel then urge that as a matter of law personal property does not acquire a situs in a county by merely passing through the same. They say that a prospective incumbrancer should not be burdened with the duty of investigating the records in every county through which personal property of a transitory nature may have passed during the 120 days im-

mediately preceding the acquisition of a mortgage lien. The legal argument advanced has a strong logical appeal. We may assume, without the necessity of deciding, that it is legally sound. The weakness of the argument lies in its application to the evidence upon which it is based. From some of the evidence introduced it might be inferred that at the time of the removal of some of the cattle from Murray county their destination was pastures in Johnston county and that they were merely halted temporarily in Pontotoc county. But this is by no means the only inference. On the contrary, positive testimony appears in the record that these cattle were removed to Pontotoc county by ranch hands at the direction of the rancher, Moore, and that no directions were given at that time concerning their subsequent removal to Johnston county. That after they had become situated in Pontotoc county Moore directed their removal to Meadow pasture in Johnston county.

This evidence amply supports the view that the cattle became situated in Pontotoc county. The trial court instructed the jury on the theory that the disputed question of fact was whether the cattle had or had not been situated in Pontotoc county. Intervener made no request for an instruction distinguishing between a "situation of personal property" in a county and a mere "passing of personal property through a county." Had such an instruction been requested and refused, a different question would be presented in this case. The trial court was not bound to give such an instruction in the absence of request, the applicable rule in that respect being, "Where the trial court has given instructions applicable to the issues and evidence, the judgment will not be reversed for failure to instruct upon any particular phase of issue unless request is made at the trial for such instruction (citing authorities)." Muskogee Electric Traction Co. v. Eaton, 49 Okla. 344, at page 354, 152 P. page 1109.

We, therefore, conclude that in so far as the evidence relating to the location of the cattle is concerned the same is sufficient to establish that the cattle in question were situated in Pontotoc county less than 120 days prior to the time that intervener acquired its mortgage lien.

We next consider the contention of the intervener that the description contained in the mortgage of the plaintiff was insufficient. The property was described in the mortgage as:

"1035 head of white-faced yearlings weighing at this time about 500 pounds each, branded ____ on left thigh bought in Ford and Motley counties, Texas, recently, high grade white-faced steers, will be dehorned, value $54,337.50 (Including also sufficient feed and grass to properly care for and feed the above cattle during the life of this loan)

"Now located on the Jesse C. Moore ranch three miles southeast of Hickory, Pontotoc county, Oklahoma."

"Being all of the property of the above description owned or controlled by the mortgagor now on said premises."

The test whereby the sufficiency of a description contained in a chattel mortgage to impart constructive knowledge of the mortgage lien to subsequent incumbrancers is determined has been firmly established by this court. In the case of Mitchell v. Guaranty State Bank, supra, it is stated in the body of the opinion by Justice Rainey as follows:

"In this jurisdiction any description in a chattel mortgage, sufficient to put a third person upon inquiry, which, when pursued, will enable him to ascertain the property intended to be included in the mortgage, is good."

In the case of Phelan v. Stock Yards Bank, 134 Okla. 13, 276 P. 175, we said in syllabus 2:

"It is not essential that property covered by a mortgage be so specifically described that it may be identified by the mortgage alone. The description is sufficient if it suggests inquiry or means of identification which, if pursued, will disclose the property conveyed, and the question of the sufficiency of a description in a mortgage is for the court or jury trying the cause, and where there is evidence reasonably tending to support the verdict, the same will not be disturbed."

Intervener urges that the description in the mortgage being considered is fatally defective because it incorrectly recited that the cattle were located in Pontotoc county at the time the mortgage was executed. An erroneous recital in the mortgage as to the location of mortgaged chattels does not vitiate the mortgage as to the third parties, provided the description correctly recites other facts from which the identity of the mortgaged property may be ascertained. Mitchell v. Guaranty State Bank, supra. It is to be observed in this connection that the chattels involved were described by brand and by place and time of purchase. The place of purchase being Ford and Motley counties, Texas, the time recently, with

reference to the date of the mortgage. The evidence in the record establishes that most of the cattle had on them West Texas brands whereby they could be identified from cattle purchased elsewhere. These brands were in addition to the brand mentioned in the mortgage.

Complaint is likewise made of the reference to the cattle in the mortgage as "yearlings." It is asserted that this reference was inaccurate in that the cattle ranged from 6 to 15 months old at the time of the mortgage. Evidence appears in the record establishing that the term "yearling," when used in describing cattle, is understood by persons in the "cattle business" to include stock which is a few months older as well as a few months younger than the age implied by the term, although some of the witnesses asserted the term should be employed in a more restricted sense and that stock which was not yet one year old should be described as "coming yearlings." It does not seem, in view of the evidence, that a prospective purchaser using proper diligence to pursue the inquiry suggested by the description in the mortgage would be misled by the use of the term criticised. This is especially true in view of the designation by brand as well as place and time of purchase.

A similar criticism is made by the intervener to that portion of the description reciting that cattle weighed "about 500 lbs." it appearing that younger animals covered by the mortgage did not weigh that much. This inaccuracy is not fatal in view of the other means of identification contained in the mortgage which we have previously mentioned.

To summarize the description in this mortgage, it is **incorrect only as to location,** somewhat 'inaccurate as to weight, and possibly partially and slightly inaccurate as to age. On the other hand, it is accurate as to **brand, place of purchase, time of purchase, kind of chattel mortgaged,** and **identity and possession of the mortgagor.**

The purpose of our statutes authorizing and regulating the filing of chattel mortgages is to provide a means whereby a prospective incumbrancer or purchaser may ascertain the existence of any prior mortgage liens. A person contemplating acquiring a mortgage lien on personal property must, in order to protect himself, determine the county or counties in which such property has been situated during the 120 days immediately preceding. He must inspect the records in such county or counties, and if a mortgage is on file, must pursue such inquiries to ascertain the identity of the property covered thereby as may be reasonably suggested by the description therein contained.

Had the intervener in this case pursued the course suggested and learned of the existence of plaintiff's mortgage, we entertain no doubt the inquiry thereby suggested would have led to the identification of the property involved in this litigation, and the difficulty in which the parties now find themselves would have been entirely avoided. The description in plaintiff's mortgage, viewed in the light of the surrounding circumstances, is sufficient to support the verdict of the jury in the trial court and to satisfy the requirements of the law.

We next address ourselves to the consideration of another primary question urged in the brief of the intervener. This question is raised in connection with certain facts which we have not previously mentioned.

It appears that the plaintiff, when its $40,000 note secured by the mortgage became due in April of 1929, extended the time of payment to August 10, 1929, and later extended time of payment to September 11, 1929. On that date the amount of the first note was added to the sum of $12,500 which had been advanced by the plaintiff to Moore for purchasing feed, and two new notes were executed by Moore, one for $30,000, the other for $22,500. The property described in the first mortgage was separated and redescribed in two mortgages, each mortgage being to secure one of the notes given. The old mortgage was released of record. The recording of these mortgages is immaterial as far as this action is concerned, since intervener's mortgage lien antedated the execution thereof and intervener's mortgage had been properly filed.

Counsel for the intervener urge that, even though they are held to have been charged with knowledge of the former mortgage, plaintiff's lien dates back only to September 11, 1929, the date of the execution of the subsequent mortgages, and is therefore inferior to the lien of intervener. It is contended that the execution of the release of the first mortgage extinguished the lien thereby created.

A mortgage is, of course, incidental to the indebtedness thereby secured. The execution of a renewal note in lieu of a note previously given is not a payment or extinguishment of the original demand nor of a chattel mortgage creating a lien to

secure the payment of the same. State v. Lonewolf, 63 Okla. 166, 163 P. 532; First State Bank of Blanchard v. Armstrong et al., 119 Okla. 98, 248 P. 1107. As we understand the contention of the intervener, they entertain the view that the case at bar does not fall within the rule announced in the cases last above cited for the reason that new mortgages were taken and the old mortgage was released. These additional facts do serve to distinguish the present case from those cited, but we cannot agree with counsel as to the effect of this distinction. Counsel attach considerable importance to the holding of this court in the case of Ambrister v. Dalton et al., 66 Okla. 158, 168 P. 231. Two mortgages were involved in that case. The second mortgage, however, secured a note given by a party who was not the maker of the note secured by the first mortgage. In holding that the lien of the first mortgage was extinguished, controlling importance was attached to the agreement of the parties, and the transaction was also held to constitute a novation. In the opinion it is said:

"We think that the notes and mortgages of 1910 were discharged for another reason, to wit, that the taking and accepting of a new obligation by another obligor as a substitute for the old, in the absence of a showing of contrary intention, operated as a novation which abrogated the original debt. In Dillard v. Dillard, 118 Ga. 97, 44 S. E. 885, it is said in the syllabus:

" 'Where by mutual agreement a note was given by J. to A., the latter having accepted the former as a substitute for his original debtor, W., this was a novation, and the debt from W. to A. was abrogated.' "

In the case at bar the maker of the notes remained the same throughout. We find in the opinion in the Ambrister Case, supra, the following approved quotation from the Alabama court, New England Mtg. Security Co. v. Hirsch et al., 96 Ala. 232, 11 South. 63, which is peculiarly applicable to the case at bar:

"And whether the taking of a second mortgage is a payment of the first depends upon the intention of the parties. When no receipt is given as for the amount secured by the first mortgage, and no release thereof is executed, the presumption is that the later notes and mortgage were not intended to pay and discharge the earlier. When such receipt is given or release executed, the contrary presumption obtains, but this is only a prima facie presumption. It may be met and overturned, whatever the form of the paper or writing relied on as evidencing payment and discharge, by proof of an intent of the parties that the

receipt or release was not to operate according to its express terms, but was executed for other purposes than to show the satisfaction of the mortgage debt and release of the mortgage lien."

The execution of the release of the former mortgage created a rebuttable presumption that the lien was thereby extinguished. This presumption was completely destroyed in this case. The evidence establishes that the new mortgages were substituted for the old one so that the cattle could be divided into two bunches and placed in different counties. (Plaintiff being then misinformed by Moore about the location and status of the property covered by the mortgage.) It is quite apparent that the plaintiff understood that the new mortgages were executed for the sake of convenience in contemplation of a relocation of the cattle and that the mortgage lien of the plaintiff would be thereby continued. The record supports the view that the release of the old mortgage was in this case merely a formal method of annulling an old mortgage when the lien had been carried forward in new instruments. We therefore hold that the trial court committed no error in refusing to hold that plaintiff had lost its lien by reason of the release of the old mortgage.

Other authorities supporting in whole or in part the views herein announced are: First State Bank of Saltillo v. Ennis Tittle Co. (Tex. Civ. App.) 200 S. W. 1122; American Type Founder Co. v. First National Bank of Teague (Tex. Civ. App.) 156 S. W. 300; Megown v. Fuller et al. (Wyo.) 266 P. 124.

Intervener also urges that plaintiff, even if entitled to claim a lien under its first mortgage, failed to plead the matter properly and should have been denied relief by reason of the insufficiency of its pleadings; that plaintiff was limited to one course of pleading; that it should have pleaded and proved equitable grounds for reinstatement of its former lien. This contention is disposed of by syllabus 3 of the case of Ambrister v. Dalton, supra, which reads:

"Whether the taking of new notes and mortgage in lieu of former notes and mortgage on the same property discharges the old obligation and releases the former mortgage lien is a question of fact; but when the old notes are surrendered and the mortgage canceled of record by order of the creditor, the presumption is that the intention was to discharge the former obligation and mortgage lien, and the burden is upon the creditor to allege and show that such was not the intention of the parties, or to set up

and prove equitable grounds for the reinstatement of the former lien."

Two alternative methods were open to plaintiff, as stated in the above quotation. Plaintiff pursued the one first indicated. It established that there was no intention to release the mortgage lien on the cattle in question. Furthermore, in this jurisdiction the prayer is not part of the petition proper, and if the facts which give rise to the relief are properly pleaded and intention of the pleading party to claim the legal benefit thereof clearly appears, the relief warranted should not be denied. The intervener's objection to the form of plaintiff's pleading is without merit.

There are other questions suggested by intervener which are without merit. Intervener criticises a number of instructions given by the trial court. We have examined these instructions, and find some inaccuracies therein. In their brief, counsel merely point out the inaccuracy and assert that the same is prejudicial. No authorities are cited in support of the argument and no effort is made to point out in what particular the inaccuracy had prejudicial effect.

Assignments of error presented by counsel in their brief, if unsupported by authority, will not be noticed on appeal unless it is apparent without further research that they are well taken. Jennings v. Jennings, 95 Okla. 90, 218 P. 703. Similarly, "A plausible but not convincing argument in a brief, unsupported by citation of authority, is not sufficient to overcome the presumption indulged by the Supreme Court in favor of the correctness of the judgment of the trial court." Blue v. Board of County Commissioners, 82 Okla. 178, 198 P. 850. See, also, Chestnut & Smith et al. v. Lynch et al., 84 Okla. 199, 202 P. 1018; Carignano v. Box, 97 Okla. 184, 223 P. 673.

Instructions of a trial court must be viewed in the light of the particular evidence upon which they operate, and the question of whether an inaccurate statement of law in an instruction in a given case constitutes prejudicial error depends "quite as much on the evidence before the jury * * * as upon the abstract accuracy of the language of the instruction." Big Jack Mining Co. v. Parkinson, 41 Okla. 125, 137 P. 678.

This court does not presume error merely because counsel asserts the same to exist. The prejudicial effect, if any, of the inaccurate language used in the instruction of the trial court, when viewed in the light of the particular evidence upon which it operated, should be pointed out in the brief. The intervener's brief in this case does not comply with these requirements in so far as complaint is made of the instructions of the trial court. No prejudicial error being made to appear in the proceedings before the trial court, the judgment is affirmed.

CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, and BAYLESS, JJ., concur. RILEY, C. J., and WELCH, J., absent.