AARON J. LASHBROOKS v. JAMES S. P. HATHEWAY.

JAMES S. P. HATHEWAY v. AARON J. LASHBROOKS AND CATHERINE LASHBROOKS.

*Mortgage—Statute of limitations—Omnibus clause.*

1. A mortgage will not keep alive the personal obligation to pay a debt after the time when it would otherwise be outlawed.

2. A mortgage which is so drawn as to cover any demands which the mortgagee may hold against the mortgager cannot authorize the mortgagee to buy up claims against the mortgager and enforce them unless the provision that he may do so is very clearly expressed. The provision can ordinarily cover only such demands as arise directly out of the dealings between the mortgager and mortgagee.

3. Where one seeks, as assignee, to foreclose a mortgage securing a non-negotiable note, but gives no evidence of title to the debt beyond the mere possession of the note and of an assignment of certain interests which are not shown to include the debt secured, his bill must be dismissed.

4. The rule that on foreclosure the defendant has the burden of showing that the debt has been paid ought not to be stringently enforced where the debtor has confided in the creditor and placed himself in his hands, and for ten years neither debtor nor creditor has taken any notice of the debt, and the evidence relating to it has become uncertain and conflicting.

5. A printed omnibus clause in a mortgage extending it to debts not covered by the amount specifically stated *seems* to be to some extent counterbalanced by the presumption arising from the fact that the stamp on the mortgage corresponds to the specified sum.

Appeal from St. Clair. (Stevens, J.) Oct. 24.—Dec. 20.

BILL to redeem and CROSS-BILL to foreclose. All parties appeal. Sale enjoined and cross-bill dismissed.

*O'Brien J. Atkinson, John Atkinson* and *Isaac Marston* for the Lashbrooks.

*Norris & Uhl* for Hatheway.

COOLEY, J. On March 12, 1866, Aaron J. Lashbrooks and Catherine, his wife, gave a real estate mortgage to John K. Hatheway to secure the sum of two thousand dollars represented by a note bearing ten per centum interest, and payable in installments, the last of which fell due March 1, 1872. In drawing the mortgage a very unusual printed form appears to have been made use of, one clause of which purported to bind the mortgagors to pay " all such further or other sum and sums of money and other indebtedness " that might be due or owing from the mortgagors or either of them when the mortgage should become due and payable or whenever foreclosed, and to authorize the mortgagee in case of foreclosure to retain the amount of such other indebtedness from the moneys realized. The residence of John K. Hatheway was in Massachusetts, and the mortgage was in the hands of Gilbert Hatheway at New Baltimore, Michigan, from the time it was made for several years. Gilbert Hatheway seems to have had charge of other interests of John K. Hatheway during this time, and Aaron J. Lashbrooks had dealings with him in his capacity of agent, in the course of which other securities were given and payments were made. It does not appear that there were any dealings in respect to the real estate mortgage after 1871, or that the mortgagors were ever called upon to make payment of either interest or principal.

In March, 1881, James S. P. Hatheway, claiming to be assignee of the mortgage, without first calling for payment, published in the county of St. Clair where the lands were situated a notice of foreclosure under the power of sale, the day of sale being fixed for June 16, 1881. When this publication first came to the knowledge of Aaron J. Lashbrooks

he filed a bill to enjoin the sale and to redeem from the mortgage. Hatheway claimed in his notice that $10,757.16 was due on the mortgage, but Lashbrooks denied any such indebtedness, asked for an accounting, and offered to pay any sum that should be found owing. He also averred that the clause in the mortgage which purported to extend it to other indebtedness than the mortgage note was not in the mortgage with his assent, and was a fraud upon him.

Hatheway answered the bill, and also filed a cross-bill against Lashbrooks and his wife, the purpose of which was to foreclose the mortgage. He alleged, in general terms, that he was assignee of the mortgage, but did not show how he became such. Besides the mortgage note he claimed to foreclose for the amount of several obligations, the most of which were given to either John K. Hatheway or Gilbert Hatheway. An answer was filed to the cross-bill, and issue having been formed, voluminous evidence was taken which was directed mainly to the question whether anything remained unpaid by Aaron J. Lashbrooks on the dealings between himself and John K. Hatheway. The court of chancery adjudged $5500 to be due and owing on the mortgage, being the $2000 and interest, and decreed a sale of the mortgaged premises to satisfy that amount, with the costs. All parties appealed.

Objection is made on behalf of the Lashbrooks that Hatheway fails to show title to the mortgage, and we are constrained to say that the objection is well taken. In his bill, as has been said, he avers in general terms that he is assignee, and he attempts to prove the allegation by producing a deed from John K. Hatheway and wife, which bears date February 26, 1872, and purports to "bargain, sell, remise, release and forever quitclaim unto the said party of the second part and to his heirs and assigns forever, all of our and each of our rights, titles and interests in and to any and all real estate and personal estate and property of whatever name or nature, situate in the counties of Macomb and St. Clair in the State of Michigan or else-

where in the United States, which has in any way arisen or grown out of the stave business (so-called transactions) as conducted by Gilbert Hatheway as attorney in fact for John K. Hatheway, including all notes, mortgages, accounts, dues, demands, choses in action and all evidences of indebtedness whatever that may arise or grow out of any or all bargains, agreements, transactions and dealings of Gilbert Hatheway, as attorney in fact for John K. Hatheway in conducting all the aforesaid referred to so-called stave business in all and every part of the United States of America." This, with possession of the mortgage note which was not negotiable, constituted the sole evidence of title in complainant. But this could not have the effect to pass the title to these securities unless it should be made to appear that in some manner they had their origin in or were in some manner connected with the stave business; and on that point we have from Hatheway neither allegation nor proof. A casual statement by Aaron J. Lashbrooks was pointed out on the argument as tending to make such proofs, but it was a vague and indefinite statement, and neither went far enough nor was sufficiently specific to establish the fact. It was conceded that the mortgage was given to secure the payment of the purchase price of land described in it, and its connection with the stave business, if any existed, must have been somewhat remote and circuitous. Hatheway, therefore, failed to establish a necessary fact on which his right to enforce the mortgage depended, and his bill must for that reason be dismissed.

Under ordinary circumstances we should go no further in the case; but as there has been a vigorous contest on the merits, and there is reason to believe that no one representing John K. Hatheway, who is now deceased, disputes the right of James S. P. Hatheway to the mortgage, and it is probable that the expression of an opinion may prevent further litigation, it seems proper to say that we have not been impressed by the evidence that any sum remains unpaid which is secured by the mortgage.

In taking the proofs, and on the argument, it has been

assumed on the part of Hatheway that the burden was upon the Lashbrooks to show payment of the mortgage debt; and the general rule is undoubtedly in accord with this assumption. The mortgagors have taken upon themselves this burden, and endeavored to make this proof, and counsel for Hatheway insist that their showing is vague, inconclusive, unsatisfactory and in some particulars inconsistent with itself and with some of the allegations in the original bill. There is foundation for the criticisms made, and they have not been overlooked by us in coming to our conclusions. But, on the other hand, we cannot overlook some circumstances which not only bear strongly against the claim set up under the mortgage, but tend to excuse the defects in the showing made against it, or at least to entitle it to be viewed with more than ordinary liberality. After ten years' delay, during which it does not appear that any claim was being made under the mortgage, or, on the other hand, that the mortgagors were recognizing it as an existing security, we find it suddenly, without warning, put in process of foreclosure, and a sum claimed under it which is not only more than five times the amount of the original debt, but is large enough, apparently, to require the sale of all the land to satisfy it. In the mean time John K. Hatheway and Gilbert Hatheway have both deceased, and any light which either of them might throw upon their dealings with the Lashbrooks has become impossible of attainment. Among the papers of Gilbert Hatheway were the various securities he had taken from Aaron J. Lashbrooks besides the mortgage in the suit, and there was a memorandum in his handwriting indicating that some of these were to be delivered up to Lashbrooks, but it was impossible to determine clearly what ones were intended. It is very plain that the Lashbrooks had confided in Gilbert Hatheway, and placed themselves to a considerable extent in his hands; and it would be both unjust and illogical to require of them, under the circumstances, the same full and complete showing of their equities that would be expected if the transactions were recent, and if the parties had apparently dealt with each

other on a footing of equality and without special trust. If there were no mortgage all remedy on these demands would have been lost by lapse of time, and the mortgage does not keep alive the personal obligation, which was barred some years ago. *Mich. Ins. Co. v. Brown* 11 Mich. 265; *Appeal of Goodrich* 18 Mich. 110; *Powell v. Smith* 30 Mich. 452. It is, of course, possible for an entirely just claim to be suffered to lie along in this manner without the notice of either creditor or debtor, but it is so unusual that the circumstance is not to be overlooked in a case standing upon uncertain or conflicting evidence.

The evidence in this case is both uncertain and conflicting, but there is testimony from impartial witnesses which, if believed, makes out a prima facie case of complete payment of the mortgage note. We are of opinion that it has not been overthrown by any evidence given on behalf of Hatheway, and that it must be accepted as conclusive.

The next question is whether the mortgage can be held to cover any other demand. We have seen that by its terms it purported to secure any claims the mortgagee might have against the mortgagors either before or at the time of foreclosure; and it seems to be thought that the mortgagee might buy up demands at discretion and thereby extend the mortgage indefinitely. But this would be so extraordinary an arrangement that the intent to provide for it ought to be too clear for doubt before a court could be justified in enforcing it. We do not think it is to be found in this mortgage. The farthest this stipulation can be understood to go is to cover demands directly arising out of the dealings between the mortgagors and the mortgagee, and its terms will be fully answered if they are limited to such demands.

But, as has been said, this mortgage was written upon a blank form, and this very unusual clause was contained in the printed part, and might very naturally have been overlooked in filling out or in signing it. There is some reason to believe that such was the case here. The mortgage was given while the federal laws requiring securities to be stamped in proportion to their amount were in force, and

it was stamped for two thousand dollars only. This raises a strong presumption that it was not understood to be operative further as a security; and it is manifest that it could not have been, while the stamp laws remained in force, without further stamping. But it is not necessary to consider this clause further than to determine that it does not extend beyond the dealings between the mortgagee and the mortgagors. Upon those dealings we are not satisfied by the evidence that anything now remains unpaid.

The conclusion is that the cross-bill must be dismissed with costs of both courts. As James S. P. Hatheway insists upon his ownership of the mortgage in suit, complainant in the original suit may have as against him a perpetual injunction to restrain foreclosure, and will recover costs.

The other Justices concurred.

After the foregoing opinion was filed attention was called by counsel to the fact that in the deed from John K. Hatheway and wife to James S. P. Hatheway a clause subsequent to the one recited in the opinion purports to " convey and deed unto the said James S. P. Hatheway all other real and personal estate and property of whatever name or nature that they or either of them have any right, title or interest in and to, situate in the aforesaid Macomb and St. Clair counties, or elsewhere in the State of Michigan." At the time of giving this deed the grantors resided in Massachusetts. Whether a debt due to one of them is to be deemed "situate" in the State of Michigan because secured upon property there, is a question upon which an opinion seems not to be called for, in view of what is above said on the merits.                                        C.