## AMBRISTER v. DALTON et al.

No. 7943—Opinion Filed Oct. 9, 1917.

(168 Pac. 231.)

**1. Chattel Mortgages — Equities —Actual Notice—Constructive Notice.**

One who purchases negotiable promissory notes in good faith for valuable consideration before maturity, which notes are secured by chattel mortgage, is charged only with actual notice of prior mortgages or liens against the property mortgaged or such constructive notice as the law implies when such matters are properly of official record or file, and such purchaser is not charged with notice merely because the person from whom he purchased had actual knowledge of such prior incumbrances when taking the security for the notes afterwards transferred.

**2. Novation — Substitution of Notes and and Chattel Mortgage.**

In the absence of evidence to the contrary, the substitution of new notes and mortgage on personal property in lieu of former notes secured by mortgage on same property, such new notes and mortgage being signed by a different obligor, the old notes being surrendered and the mortgage canceled of record, will be held to constitute a novation and to extinguish the former indebtedness and the lien created by virtue of the former mortgage.

**3. Chattel Mortgages—Discharge of Old Obligation — Question for Jury—Presumption and Burden of Proof.**

Whether the taking of new notes and mortgage in lieu of former notes and mortgage on the same property discharges the old obligation and releases the former mortgage lien is a question of fact; but when the old notes are surrendered and the mortgage canceled of record by order of the creditor, the presumption is that the intention was to discharge the former obligation and mortgage lien, and the burden is upon the creditor to allege and show that such was not the intention of the parties, or to set up and prove equitable grounds for the reinstatement of the former lien.

**4. Chattel Mortgages — Second Mortgage —Lien.**

When a mortgage given to secure notes is discharged and the indebtedness satisfied, a second mortgage on the same property becomes at once a first lien.

(Syllabus by Stewart, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by C. A. Ambrister against Pete Dalton, the Brunswick-Balke-Collender Company, of Oklahoma, and others. Judgment for defendant Brunswick-Balke-Collender

Company as to priority of mortgage lien, and plaintiff brings error. Reversed and remanded, with directions.

Stuart, Cruce & Cruce, for plaintiff in error.

Hainer, Burns & Toney, for defendants in error.

Opinion by STEWART, C. The Brunswick-Balke-Collender Company is and has been for a number of years engaged in the business of manufacturing and selling pool and billiard furniture. On the 1st day of November, 1907, such company took a mortgage in Wichita, Kan., to secure a note signed by Milo E. Adams Cigar Company on pool and billiard fixtures; the mortgage being in the sum of $6,258 for balance on purchase price of goods sold. On October 1, 1910, the Milo E. Adams Cigar Company removed its business and the property mortgaged to Oklahoma City, in the state of Oklahoma; said mortgage indebtedness remaining largely unsatisfied. In November, 1910, the Brunswick-Balke-Collender Company took new notes and mortgage on the same and additional property in the sum of $7,000, being for the balance due and unpaid on the mortgage executed at Wichita, Kan., and also for the price of additional property purchased. The notes secured by the mortgage made in Kansas were at that time canceled and surrendered to the maker, and on November 28, 1910, the mortgage for $7,000 was duly filed in the office of the register of deeds of Oklahoma county, in which county the property was then situated. On May 3, 1911, W. N. Patterson, acting as the agent of the Milo E. Adams Cigar Company, sold the business together with all interest of the Milo E. Adams Cigar Company in the. property involved to Pete Dalton and J. M. Tomberlin with the acquiescence of the Brunswick-Balke-Collender Company; the said Pete Dalton and J. M. Tomberlin indorsing the notes made in November, 1910, by Milo E. Adams Cigar Company to the Brunswick-Balke-Collender Company, the Milo E. Adams Cigar Company remaining, however, primarily liable for such indebtedness. W. N. Patterson took a mortgage in the sum of $5,500 to secure negotiable notes made by Pete Dalton and J. M. Tomberlin in payment for the business and interest in the property acquired. This mortgage was immediately filed as required by law with the proper officer in Oklahoma county, where the property was situated, and included the property covered by the mortgage made in 1910 to the Brunswick-Balke-Collender Company,

and by its terms was made subject to such mortgage. Before maturity for valuable consideration, and in good faith the plaintiff C. A. Ambrister became the owner of the notes made by the said Pete Dalton and J. M. Tomberlin and secured by such second mortgage. In December, 1913, there remained due on the mortgage of 1910 the sum of $5,100, and on such day the Brunswick-Balke-Collender Company took a new mortgage for such indebtedness, surrendering and canceling the notes and mortgage made in 1910. The notes held by the plaintiff not being paid when due, on April 25, 1914, the plaintiff began an action on said notes to foreclose his mortgage lien, in which action the Brunswick-Balke-Collender Company was joined as defendant, the plaintiff alleging that his mortgage was superior to all interest of the Brunswick-Balke-Collender Company in and to the property mortgaged. The Brunswick-Balke-Collender Company answered by setting up the mortgage of 1907 given in Kansas, asking for a foreclosure, and that its lien be declared superior to that of the plaintiff. It was agreed by all the parties that there would be no personal judgment against any of the defendants; the only question presented to the trial court being that of priority of liens as between the plaintiff and the defendant Brunswick-Balke-Collender Company. Judgment was rendered in favor of the defendant Brunswick-Balke-Collender Company adjudging its lien prior to that of the plaintiff, and foreclosing the liens of both plaintiff and defendant; the proceeds of the sale of the property to be applied first to the payment of indebtedness due the defendant.

After the introduction of testimony, the defendant Brunswick-Balke-Collender Company was permitted to amend its answer and cross-action by setting up the mortgage taken in 1910, and the mortgage taken in 1913 on the theory that the court, in its discretion, could permit an amendment to conform to the proof. The · Brunswick-Balke-Collender Company, in its original answer, as before stated, declared on the mortgage of 1907. We cannot see that the defendant was in any better position because of the amendment made. It will not be urged that the mortgage of 1913 was prior to plaintiff's mortgage. The plaintiff had no notice, actual or constructive, of the mortgage of 1907; therefore the defendant's right to priority must rest on the mortgage of 1910. But if the indebtedness secured by the mortgage of 1910 was discharged and the lien released, defendant would have no rights

except those fixed by the mortgage and notes of 1913.

The plaintiff testified that he had no knowledge of the mortgage of 1907 at the time he purchased the notes, and there is nothing in the record tending to disprove such testimony. It is practically conceded in the briefs of both parties to this controversy that, under the law, there was no constructive notice to the public of the existence of such mortgage. There were no attesting witnesses,. nor was the mortgage otherwise attested. It is admitted that, under the law of Kansas, in order for a chattel mortgage, though duly filed, to remain effective as against subsequent bona fide incumbrancers, a renewal affidavit must be filed 30 days before the expiration of two years after filing the mortgage. This was not done. In October, 1910, a purported certified copy of the Kansas mortgage was filed in Oklahoma county, but it is clear that, for the foregoing reasons, it was not entitled to be filed, and if filed, imparted no notice. But it is urged by the Brunswick-Balke-Collender Company that because of the fact that Patterson had knowledge of the mortgage of 1907, the plaintiff having purchased from Patterson, was charged with notice of such knowledge as Patterson had. There is no evidence to show that, when new mortgages and notes were taken and the notes of 1907 surrendered, it was not the intention of the parties to discharge the indebtedness evidenced by such notes, but assuming that, as between the company and the original parties to the notes and mortgages of 1907, the company had a first lien, we cannot agree with the claim of counsel that the plaintiff, being a purchaser in good faith for value, before maturity, of negotiable notes, was charged with anything but actual notice or such constructive notice as the law implies when such knowledge is properly a matter of official record or of official file. Such a construction of the law would destroy the value and usefulness of commercial paper. In the purchase of secured negotiable paper the collateral security is generally of more value than the personal obligation of the makers.

The only further question that presents itself is whether or not, under the evidence in this case, it must be held, as a matter of law, that the lien fixed by the mortgage of 1910 was discharged when the notes and mortgage of 1913 were executed. As a general proposition this would be a question of the intention of the parties, but we are aware of no way to gauge a person's intention except by his acts. The legal presumption is that the necessary result of a person's acts was intended. We are also reminded in this case that the intention must have been mutual. The presumption is that, when new notes and mortgage are taken on the same property in lieu of former notes and mortgage, the former notes surrendered and the mortgage released by order of the creditor, the old debt and mortgage is discharged. If such presumption was not indulged in favor of a release, it would be futile to execute such an instrument.

The attorney for Brunswick-Balke-Collender Company who took the notes and mortgage in 1913 testified that he took the same as a substitute for and in consideration of the old indebtedness, and that he had such authority from his client. There is no testimony to show that any party to the transaction contemplated anything but the discharge of the former indebtedness and lien. The new notes and mortgage do not show on their face to be a renewal. The surrendering of the old notes and release of the mortgage coupled with the attorney's testimony support the contention that the satisfaction and discharge of the former indebtedness was the legal effect of the transactions had. This conclusion is strengthened by the fact that the notes and mortgages taken in 1913 were signed by a different obligor and the original debtor released. It is evident from the record that there was no agreement that the original indebtedness and lien was to remain in force and effect, and it certainly cannot be maintained that, by legal construction, such would be the result.

The equity powers of the court were not invoked in any manner to relieve the Brunswick-Balke-Collender Company from the result of its action in canceling the notes and mortgages. There was no showing of fraud, mistake, accident, or duress, and no evidence to such effect. The courts cannot search secret archives in the minds of litigants to discover intentions, nor does a mere mistake as to the legal effect of their acts relieve them from the necessary results. Because of the cogent and clear disquisition of the law involved in the case at bar and the similarity of the facts and the issues, we are constrained to quote at length from the opinion of Mr. Justice McClellan in New England Mortgage Surety Co. v. Hirsch et al., 96 Ala. 232, 11 South. 63:

"And whether the taking of a second mortgage is a payment of the first depends upon the intention of the parties. When no receipt is given as for the amount secured by the first mortgage, and no release there-

of is executed, the presumption is that the later notes and mortgage were not intended to pay and discharge the earlier. When such receipt is given or release executed, the contrary presumption obtains. But this is only a prima facie presumption. It may be met and overturned, whatever the form of the paper writing relied on as evidencing payment and discharge, by proof of an intent of the parties that the receipt or release was not to operate according to its express terms, but was executed for other purposes than to show the satisfaction of the mortgage debt and release of the mortgage lien. * * * We do not think the New England Mortgage Security Company has discharged the burden resting on it to rebut the presumption of satisfaction and release of the mortgage of December 23, 1881, by showing that the acknowledgment of payment and the release executed by it on March 14, 1887, was not intended as a receipt for the debt secured thereby, and a release of all lien and claim thereunder. There is nothing in this record going to show that the release in question imports upon its face anything other than the parties intended it should. It was manifestly the purpose of the company to discharge and annul the first mortgage, and rely alone upon that executed on March 10, 1887, to secure the debt due from Moody to it. It may be that those representing the corporation in taking the second mortgage supposed that its lien would relate back and take precedence as of the date of the original mortgage, for the debt secured by and upon the land included in which the second mortgage was taken, and that had it been known that such a result would not be attained, the first mortgage would not have been satisfied and discharged; but this consideration discloses only a legal sophistry, operating to induce the company to release the first mortgage, but having no tendency whatever to show that it did not intend the release and satisfaction which it executed, but going, to the contrary, to show that it was fully intended to do what appears on the face of the paper to have been done, though that intention would not have been entertained, it may be, had the parties apprehended the legal consequences of the act. * * * Had the release been the result of fraud or mistake of fact or accident, the jurisdiction of equity might be invoked to relieve against it; but the evidence of fraud, accident, or mistake is required to be very clear to induce the court to interfere, annul the discharges, rehabilitate the first mortgage, and give it priority over intervening liens."

We think that the notes and mortgages of 1910 were discharged for another reason, to wit, that the taking and accepting of a new obligation by another obligor as a substitute for the old, in the absence of a showing of contrary intention, operated as a novation which abrogated the original debt. In Dillard v. Dillard, 118 Ga. 97, 44 S. E. 885, it is said in the syllabus:

"Where by mutual agreement a note was given by J. to A., the latter having accepted the former as a substitute for his original debtor, W., this was a novation, and the debt from W. to A. was abrogated."

As in accord with the views expressed, we call attention to the following authorities: Wilkes v. Miller et al., 156 N. C. 428, 71 S. E. 482; Paine v. Waite, 11 Gray (Mass.) 190 Farkas v. Third National Bank, 133 Ga. 755, 66 S. E. 926, 26 L. R. A. (N. S.) 496; Lyon v. Clochessy, 43 Misc. Rep. 67, 86 N. Y. Supp. 245; Grubbe v. Pierce, 156 Wis. 29, 145 N. W. 207, 51 L. R. A. (N. S.) 358, Ann. Cas. 1915 C, 1199; Daly v. Proetz, 20 Minn. 411 (Gil. 363); Christofferson v. Howe, 57 Minn. 67, 58 N. W. 830.

That, upon the discharge of a first chattel mortgage indebtedness, a second mortgage becomes a first lien is decided by this court in Ford et al. v. Coweta Hardware Co., 49 Okla. 523, 153 Pac. 865; Ackerman v. Chapell Hardware Co., 41 Okla. 275, 137 Pac. 349. Counsel for Brunswick-Balke-Collender Company argue that the notes to the company were for the purchase price of the mortgaged goods and constitute a "superior paramount and intrinsic lien" over all others, especially over liens, the holders of which had notice of such equity. Counsel cite Pomeroy on Equity (3d Ed.) vol. 2, §§ 688, 725, in which sections the author discusses equitable liens for the purchase price of real estate, and reiterates the long established and wholesome doctrine to the effect that a purchaser of an estate, legal or equitable in land with notice of lien for unpaid purchase price buys subject to such pre-existing equities. Our especial attention is called to the following words of the author: "

"A substitution of one species of lien for another by changing the form of security given for the purchase money does not affect the operation of the rule."

It is contended that, while the author discusses the rule with reference to real property, there is no difference when the same is applied to personal property. Land is stable, fixed and permanent in its nature. Personal property is transient, movable, and generally subject to wear and decay. The barter and sale of personal property is the chief subject of commerce and trade, and such property changes hands, on the whole, quite as frequently and as necessarily as the circulating medium of the country. In view of these facts it is hardly proper to apply the same rule as to transfers of interests in personal property as obtains with reference

to land. However, assuming but not deciding that the contention of counsel is correct, we must hold that the principles announced would not be applicable to the facts in the case at bar. The plaintiff, under the testimony, had notice only of the mortgage of 1910. He understood that it was made to secure the purchase price and constituted a vendor's lien, We hold that there was a novation, and that such lien was extinguished. We agree with Mr. Pomeroy concerning the "substitution of one species of lien for another by changing the form of security." We do not hold that such substitution necessarily destroys the former lien. Assuredly it cannot be said that, by contract, such lien may not be abrogated altogether and another substituted. We have held that the prima facie evidence in this case, not disputed by other evidence, shows that this very thing was done. The vendor's lien, once existing, was extinguished and a new and different obligation substituted.

The judgment of the trial court is reversed, and this cause remanded, with directions to set aside the judgment rendered and render judgment for C. A. Ambrister, the plaintiiff, adjudging his mortgage to the extent of the unpaid amount due on the notes sued upon by him to be a first lien upon the property involved, and that the mortgages be foreclosed and the property sold, the proceeds to be first applied on the indebtedness of the plaintiff, the residue, if any, to be applied to the indebtedness due the defendant the Brunswick-Balke-Collender Company.

By the Court: It is so ordered.