HOLIDAY INNS, INC. v SUCHER-SCHAEFER INVESTMENT
COMPANY

1. Mortgages—Securing All Existing Debts—Unspecified
   Amounts.

   A mortgage given to secure all existing debts of the mortgagor to
   the mortgagee is valid even where the amount of the debts is
   not specified.

2. Mortgages—Securing Other Indebtedness—Mortgagors—
   Mortgagees.

   A mortgage clause which purports to bind the mortgagors to pay
   all further or other sum and sums of money and other indeb-
   tedness that might be due or owing from the mortgagors when
   the mortgage becomes due or is foreclosed has been held to
   apply only to demands directly arising out of the dealings
   between the mortgagor and mortgagee.

3. Mortgages—Dragnet Clause—Co-Mortgagors—Subsequent
   Notes.

   A "dragnet" clause in a mortgage by which the mortgage indi-
   cates that it secures the payment of all sums, indebtedness and
   liabilities of any kind due or to become due from the mortgagor
   to the mortgagee covers only those debts entered into by the
   mortgagor, and where there are co-mortgagors notes subse-
   quently signed by only one of the co-mortgagors are not secured
   by the mortgage.

4. Mortgages—Co-Mortgagors—Dragnet Clause—Summary Judg-
   ment.

   A "dragnet" clause in a mortgage which covers debts between the
   mortgagor and the mortgagee and does not refer to the debts of
   "the mortgagor or either or any of them" does not cover
   another mortgage entered into by one of the two co-mortgagors

References for Points in Headnotes

[1] 55 Am Jur 2d, Mortgages §§ 152, 153.
[2] 55 Am Jur 2d, Mortgages § 395.
[3, 4] 55 Am Jur 2d, Mortgages §§ 142–145.

on the original mortgage, and a summary judgment granted to a mortgagee bank upon default on one of the mortgages and which included the amounts owing on both mortgages was erroneous.

Appeal from Oakland, Robert L. Templin, J. Submitted June 23, 1977, at Detroit. (Docket Nos. 30804, 30805, 30806, 77-205, 77-206.) Decided August 23, 1977. Leave to appeal applied for.

Complaint of interpleader by Holiday Inns, Inc., against Sucher-Schaefer Investment Co., Bank of the Commonwealth, and several other defendants, requesting that rental payments claimed by the defendants be deposited with the court and that an adjudication be made as to who is entitled to those payments. Bank of the Commonwealth cross-claimed against all other defendants, asserting a prior claim. Summary judgment for Bank of the Commonwealth. Several of the defendants appeal, and those appeals are consolidated for hearing and decision. Reversed and remanded.

*Honigman, Miller, Schwartz & Cohn* (by *Jason L. Honigman* and *Peter M. Alter)*, for Bank of the Commonwealth.

*Bodman, Longley, Bogle & Dahling* (by *Michael A. Stack, Alfred C. Wortley, Jr.,* and *Joseph J. Kochanek)*, for Manufacturers National Bank of Detroit.

*Smith, Miro, Hirsch, Brody & Zweig* (by *Sally W. Staebler)*, for Henry Lee.

*August, Thompson, Sherr & Miller, P. C.* (by *Arnold S. Schafer)*, for Howard Hemminger, Helen Hemminger, and William Sterling.

Before: Beasley, P. J., and V. J. Brennan and
J. R. McDonald,* JJ.

V. J. Brennan, J. On December 28, 1976, de-
fendant Bank of the Commonwealth (hereafter
Commonwealth) was granted summary judgment
on its claim for all rents from the Troy Holiday
Inn. Judgment was entered on October 13, 1976,
and several of the remaining defendants in this
interpleader action appeal.

We will try to simplify the facts in the interest
of clarity. On November 1, 1969, defendants Jack-
son leased some property at the intersection of I-75
and Rochester Road in Troy, Michigan to defend-
ant Sucher-Schaefer Investment Company (hereaf-
ter Sucher-Schaefer), which often worked through
the name Jaguar Management Corporation.
Sucher-Schaefer intended to build a hotel on the
property. The ground lease required the Jacksons
to join in a mortgage "for the purposes of obtain-
ing funds with which to construct buildings and
improvements" on their property.

In late November or December of 1969, Com-
monwealth issued two mortgage loan commit-
ments to Sucher-Schaefer. On March 18, 1970,
Sucher-Schaefer sublet the Troy property to Holi-
day Inns, Inc. (hereafter Holiday Inns).

On April 29, 1970, Sucher-Schaefer (as Jaguar)
and the Jacksons executed a mortgage on the Troy
property for $1,560,000 to Commonwealth. On May
13, 1970, Sucher-Schaefer mortgaged additional
property in Highland Park for $2,160,000. Sucher-
Schaefer was going to build another Holiday Inn
on that property.

Neither mortgage specifically referred to the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

other mortgage or property, but each mortgage indicated that it secured, among other things,

" * * * the payment of any and all sums, indebtedness and liabilities of any and every kind now or hereafter owing and to become due from the Mortgagor to the Mortgagee * * * during the term of this mortgage, howsoever created, incurred, evidenced, acquired or arising, whether under said note or this mortgage or under any other instrument, obligations, contracts or agreements, or dealings of any and every kind now or hereafter existing or entered into between the Mortgagor and the Mortgagee or otherwise and whether direct, indirect, primary, secondary, fixed or contingent, together with interest and charges as provided in said note and in any other agreements had by and between the parties herein, and including all present and future indebtedness incurred or arising by reason of guarantee to Mortgagee by Mortgagor of present or future indebtedness or obligations of third parties to Mortgagee, and of present and future indebtedness originally owing by Mortgagor to third parties and assigned by said third parties to Mortgagee, and any and all renewals or extensions of any of the foregoing (hereinafter collectively called the 'debt'), * * * ."

The Troy mortgage also included the following:

"18. Marvin H. Jackson and Louise C. Jackson, his wife, are participating in the execution of this Mortgage for the sole purpose of subordinating their interest in the real estate owned by them and described on Schedule A attached hereto to the lien of this Mortgage, notwithstanding anything contained in any other portion of this Mortgage, Marvin H. Jackson and Louise C. Jackson, his wife, shall in no way be obligated to the Mortgagee for the payment of the debt secured by this Mortgage."

Cost increases made additional loans necessary

and Sucher-Schaefer sought $250,000 more for each project.

On September 10, 1971, defendants Hemminger and William Sterling signed subordination agreements with Sucher-Schaefer (as Jaguar). These people had interest in the Troy property under unrecorded deeds. The agreements provided that:

"The interest of [name] in the following described property:

"[Troy property description]

is and shall be in all respects subordinate to the Lien of Mortgage granted or to be granted by JAGUAR MANAGEMENT CORPORATION, a Michigan Corporation, to the BANK OF THE COMMONWEALTH in the amount of One Million and Eight Hundred and Ten Thousand ($1,810,000.00) Dollars."

On December 6, 1971, the mortgages were amended to reflect the additional $250,000 loan on each project. The Troy mortgage was thus increased to $1,810,000. No dragnet or all debts or anaconda or cross-collateral clause was included in the amendment. The following language appeared in the amendment:

"1. All references in the Mortgage to the loan in the amount of One Million, Five Hundred Sixty Thousand Dollars ($1,560,000.00) are hereby changed to One Million, Eight Hundred Ten Thousand Dollars ($1,810,000.00). The Mortgage shall hereafter secure the payment when due of the principal sum of One Million, Eight Hundred Ten Thousand Dollars ($1,810,000.00) together with interest and charges thereon as provided in said instruments and as evidenced by the Promissory Note of April 29, 1970, as modified by the Amendment to Promissory Note of even date herewith. All references in the Mortgage to the Promissory Note of April 29, 1970, shall include the Amendment to Promissory Note of even date herewith."

About this time defendants Henry Lee and Gloria Schaefer appeared with their alleged interests in the Troy property. Lee claims under a deed that was not recorded until after Commonwealth recorded both the mortgage and the amendment. Schaefer claims under a divorce decree which was recorded after the Troy mortgage and amendment were recorded.

On February 8, 1972, Sucher-Schaefer (as Jaguar) executed a $2,500,000 mortgage with defendant Manufacturer's Bank of Detroit (hereafter Manufacturer's). The mortgage apparently covered both the Troy and Highland Park projects.

On May 31, 1972, the Jacksons executed a subordination agreement similar to that signed by the Hemmingers and Sterling. The agreement specifically referred to the $1,810,000 mortgage on the Troy property.

The Troy project flourished and the Highland Park project failed. The Troy payments were kept up to date but the Highland Park payments were not kept current. On March 10, 1976, Commonwealth declared a default on the Troy mortgage and demanded that Holiday Inns pay all rentals due on the Troy property directly to Commonwealth. Sucher-Schaefer and the Jacksons sought a similar result.

On June 11, 1976, Holiday Inns filed an interpleader action in Oakland County Circuit Court. Commonwealth claimed that the Troy mortgage, by its dragnet clause, covered the Highland Park debt as well as the Troy debt. Hence, the Troy mortgage covered at least $4,220,000. The defendants on appeal claim that the Troy mortgage covers $1,810,000 and no more.

Commonwealth moved for summary judgment under GCR 1963, 117.2(2) and 117.2(3). After a

hearing on September 28, 1976, the trial court granted Commonwealth's motion under GCR 1963, 117.2(3). Defendants Jackson, Hemminger, and Sterling, Lee, Schaefer, and Manufacturer's all appeal.

On appeal, several allegations are presented by the parties. In the interest both of clarity and brevity, we will not address each issue separately. Instead, we will discuss the question of the dragnet clause and whether that clause covers the claims under this appeal in such a way as to justify the trial court's grant of summary judgment under GCR 1963, 117.2(3).

We find very little authority in Michigan regarding third party rights and dragnet mortgage problems. However, we do find that certain general rules can be gleaned from Michigan cases dealing with dragnet clauses and principal party rights.

A mortgage given to secure all existing debts of the mortgagor to the mortgagee has been found valid, even where the amount of the debts is not specified. *Michigan Insurance Company of Detroit v Brown,* 11 Mich 265, 271 (1863). However, the Michigan Supreme Court has been less receptive when confronted with a dragnet clause similar in intent to the clause before us now, which purported "to bind the mortgagors to pay 'all such further or other sum and sums of money and other indebtedness' that might be due or owing from the mortgagors or either of them when the mortgage should become due and payable or whenever foreclosed". *Lashbrooks v Hatheway,* 52 Mich 124, 125; 17 NW 723 (1883). This clause authorized the mortgagee in case of foreclosure to obtain the amount of such other indebtedness from the monies realized.

In construing the clause, the Supreme Court

concluded that the stipulation covers *only* "demands directly arising out of the dealings between the mortgagor and mortgagee, and its terms will be fully answered if they are limited to such demands". *Lashbrooks v Hatheway, supra* at 129. We believe this standard properly applies to this case as well.

We find the Troy dragnet clause covers only those debts entered into by the mortgagor. The mortgagor was Sucher-Schaefer (as Jaguar) *and* defendants Jackson. The only debts entered into by Sucher-Schaefer (as Jaguar) and the Jacksons were the original Troy mortgage and possibly the amendment to the Troy mortgage. Therefore, the Highland Park mortgage, entered into only by Sucher-Schaefer (as Jaguar), is not covered by the Troy mortgage.

We find considerable support in other jurisdictions for this view. Where there are three co-mortgagors and the dragnet clause refers to these mortgagors as "party of the first part" and "grantor" and covers the indebtedness of the "grantor", notes subsequently signed by only one of the co-mortgagors are not secured by the mortgage. *Americus Finance Co v Wilson,* 189 Ga 635; 7 SE2d 259 (1940). The same rule applies where the co-mortgagors are husband and wife and one of them subsequently executes a note. *Monroe County Bank v Qualls,* 220 Ala 499; 125 So 615 (1929), *First Bank & Trust Co v Welch,* 219 Iowa 318; 258 NW 96 (1934), *Cordele Banking Co v Powers,* 217 Ga 616; 124 SE2d 275 (1962), *United States v American National Bank of Jacksonville,* 255 F2d 504 (CA 5, 1958).

We would distinguish these cases from those dealing with dragnet clauses which refer to the debts of the "mortgagors or either or any of

them". Such language and similar language has been held to cover subsequent notes of one of the co-mortgagors. *Lamoille County Savings Bank & Trust Co v Belden,* 90 Vt 535; 98 A 1002 (1916), *Walters v Merchants & Manufacturers Bank,* 218 Miss 777; 67 So 2d 714 (1953), *Carlson v Lawrence H Oppenheim Co,* 334 Mass 462; 136 NE2d 205 (1956), *Wright v Lincoln County Bank,* 62 Tenn App 560; 465 SW2d 877 (1970). See also *First v Byrne,* 238 Iowa 712; 28 NW2d 509 (1947).

In the present case, mortgagor in the Troy mortgage is the Jaguar Management Corporation *and* the Jacksons. The dragnet clause in this mortgage covers debts between mortgagor and mortgagee. The dragnet clause does not say "the mortgagor or either or any of them". The Highland Park mortgage is not signed by Jaguar *and* the Jacksons. Hence, the plain language of the dragnet clause excludes the Highland Park project from being covered by the Troy mortgage.

We find this interpretation and result consistent with the statement in *Lashbrooks* that dragnet clauses only cover demands directly arising out of the dealings between the mortgagor and the mortgagee.

The trial court erred in granting summary judgment to Commonwealth pursuant to GCR 1963, 117.2(3). As far as the other defendants on appeal are concerned, the Troy mortgage situation should continue as if the Highland Park project had never existed. Defendants Jackson get their rent; defendants Hemminger and Sterling are subordinated only to the extent of their subordination agreements; defendants Lee and Schaefer stand wherever they stood prior to the trial court ruling; and Manufacturers is subordinated only to the $1,810,000 of the Troy mortgage.

Reversed and remanded for proceedings in conformity with this opinion.