2012 OK CIV APP 7

**BANK of KREMLIN, An Oklahoma Banking Association, Plaintiff,**

v.

**Leo Jack DAVIS and Grace G. Davis, Husband and Wife, Defendants/Appellants,**

v.

**Sue A. Mason–Tomlinson, Third Party Defendant/Appellee/Cross–Appellant.**

**No. 107,817.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 22, 2011.

Steven D. Singer, Enid, Oklahoma, for Appellants.

Tim J. Crowley, Enid, Oklahoma, for Appellee.

LARRY JOPLIN, Judge.

¶ 1 Appellants, Jack and Grace Davis (Davis), seek review of the trial court's order in favor of Third Party Defendant/Appellee/Cross–Appellant, Sue Mason–Tomlinson (Sue Mason), which found that the Central National Bank & Trust Co. of Enid (CNB) note, signed by Sue Mason and her cousins, Lance Mason and his wife, Amanda, in 1998, was discharged and Sue Mason owed no further obligation on that note and corresponding mortgage. The court also found Lance and Amanda Mason signed a $605,500 loan obligation in favor of Davis in September 2005, known as "the big note," which was executed to consolidate a number of Lance and Amanda Mason's obligations. The court determined the 1998 CNB note was an integral part of the consideration given for the execution of the "big note," and no assignment of the CNB note and mortgage was contemplated by the "big note." Both parties were ordered to pay their own attorney fees and costs.

¶ 2 On appeal, Davis asserts that every element of the mortgage obligation under the CNB mortgage is uncontroverted and the obligation is still owed by Sue Mason, who signed the CNB note in 1998. Davis insists Sue Mason has proved none of her affirmative defenses, and Davis is entitled to foreclose. Appellee, Sue Mason, filed a cross appeal, asking this court to review the denial of her request for attorney fees.

¶ 3 Having reviewed the record, we affirm the trial court's determination with respect to Sue Mason's obligation on the CNB note and mortgage and reverse and remand for further proceedings the trial court's denial of Sue Mason's request for attorney fees.

¶ 4 In May 1998, Sue Mason and her cousin, Lance Mason, entered into a loan agreement which resulted in the CNB note and mortgage in the amount of $64,400 for a property in the northwest quarter of section 27–21–10 and the east half of the northeast quarter of section 28–21–10, approximately 240 acres in Major County, Oklahoma. In 2000, Lance and Amanda Mason deeded to Sue Mason 13 acres in the east half of the northeast quarter of section 28–21–10, in order to facilitate Sue Mason's objective of building a home on the property, since the bank wanted her to be in full ownership of the property prior to advancing the funds to build the home. As to the remaining property subject to the CNB note and mortgage, Lance, Amanda and Sue Mason remained tenants in common.

¶ 5 During the course of their ownership of the property listed in the CNB note, Lance and Sue Mason were to make annual mortgage payments each July until 2018. Each year, through July 2004, Lance and Sue Mason made payments on the CNB obligation. In July 2005, they made no payment. On August 31, 2005, Davis paid the obligation in full for the amount of $56,155.81. Davis's cashiers check to CNB noted the check was for an assignment of the first mortgage of Lance and Sue Mason. An advice and charge from the Bank of Kremlin also noted an assignment to Davis of the Lance and Sue Mason first mortgage. The assignment was recorded, but Sue Mason was not otherwise notified of the assignment, did not receive any statements or requests for payment from Davis, nor was she ever notified of an alleged default prior to Davis' attempts to foreclose in 2007. According to Sue Mason's testimony, Lance Mason had assured her that he was taking care of the CNB mortgage and so she was not necessarily concerned with notices or documentation relating to the CNB loan.

¶ 6 On September 1, 2005, the day after Davis paid the CNB note, Lance and Amanda Mason entered into a loan agreement with Davis, signing a promissory note in favor of Davis for $605,500. This indebtedness came to be known as the "big note." The "big note" makes no mention of Sue Mason, is not signed by Sue Mason and does not include any reference to the CNB note or an assignment thereof. The "big note" provides that Lance and Amanda Mason "have mortgaged and hereby mortgages to Leo J. Davis and Grace G. Davis ... the following described real estate and premises situated in Major County, State of Oklahoma[,]" provided in Exhibit "A." Exhibit "A" includes a property description that corresponds to the property at section 27–21–10, described in the 1998 CNB note and mortgage.[1]

¶ 7 Plaintiff, Bank of Kremlin, commenced the underlying action against Lance Mason on November 30, 2006, and Sue Mason was joined as a Third Party Defendant in March 2007, when Davis sought to foreclose on the CNB mortgage. The entire cause of action concerned a number of Lance Mason's obligations, including the "big note," but this appeal involves only the issue of Davis' attempt to foreclose on the CNB mortgage and Mason's requested attorney fees and costs.

¶ 8 The matter was tried to the court in July 2009. The trial court issued its ruling in August 2009 and memorialized the ruling in the journal entry of judgment November 19, 2009. The trial court determined, prior to the purported assignment of the CNB note and mortgage to Davis, Lance and Amanda Mason deeded to Sue Mason a thirteen acre tract of land, which had been part of the property described in the CNB mortgage. Both the deed and mortgage associated with this transaction were duly and properly recorded. The trial court found when Lance and Amanda Mason executed the "big note," the obligation to pay under the CNB note merged into and became part of the "big

---

1. The "big note" Exhibit A, provided in the record as an exhibit to the transcript of proceedings on July 24, 2009 and also at vol. 1, p. 100 of the county court materials, does not actually include a description of the CNB property described as E/2 of NE/4 of 28–21–10 Major Co., Oklahoma. Exhibit A of the "big note" does describe the CNB property in section 27–21–10. However, the affidavit provided by George Davis, Davis' son and attorney-in-fact, states that the Lance and Amanda Mason agreements granted Davis a mortgage interest in the listed properties, which includes the CNB property in sections 27–21–10 and 28–21–10.

note." The court found the CNB note, in the principal sum of $64,400, secured by the recorded mortgage, was "hereby extinguished and released," and Sue Mason owed no further obligation under the CNB note and mortgage, and it was not subject to any claims by Davis. From this order Appellants brought this appeal.

¶ 9 On November 12, 2009, the trial court heard Sue Mason's motion for attorney fees and costs. Mason's request was denied on November 19, 2009. From this order Sue Mason appealed.

¶ 10 "The foreclosure of a mortgage is equitable in its nature, although based on legal rights[.]" *Murphy v. Fox,* 1955 OK 1, 278 P.2d 820, 825; *Paris Bank of Texas v. Custer,* 1984 OK 5, 681 P.2d 71, 76. "Ordinarily, in reviewing a case of equitable cognizance a judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity. [*Paris Bank of Texas v. Custer,* 681 P.2d at 76]." *Abboud v. Abboud,* 2000 OK CIV APP 116, ¶ 4, 14 P.3d 569, 571. And "[w]hether the taking of new notes and mortgage in lieu of former notes and mortgage on the same property discharges the old obligation and releases the former mortgage lien is a question of fact[.]" *Ambrister v. Dalton,* 1917 OK 483, 168 P. 231.

¶ 11 Davis has maintained three arguments throughout these proceedings. First, he asserts the CNB future advances clause is valid against the original borrowers, even though the advance was to fewer than all the original borrowers. Second, he maintains that Lance and Sue Mason remain jointly and severally liable for the original 1998 CNB note and mortgage and the CNB obligation and "big note" are two completely separate, distinct and unrelated agreements. Third, the CNB obligation merged into and became part of the "big note."

¶ 12 Davis may not successfully argue, on the one hand, that the CNB obligation was valid and ongoing, while admitting the CNB obligation and "big note" merged, because merger extinguishes the original indebtedness. The trial court found Davis' admission that the CNB obligation was absorbed and merged into the obligation under the "big note" to be the more compelling of these two positions.

¶ 13 Whether a second mortgage is payment for a first mortgage depends on the intent of the parties and is a question of fact. *Muskogee Indus. Fin. Corp. v. Perkins,* 1961 OK 110, 361 P.2d 1065, 1069; *Ambrister v. Dalton,* 168 P. at 233. There are facts in the record—most notably, Davis' admission the obligations merged—to support the court's determination that the two obligations merged. In addition, there is evidence Davis treated the "big note" as the only continuing obligation, having made no attempts to collect from Sue Mason on the CNB debt for years prior to this foreclosure action. The record also contained evidence from Davis' accountant that she was unaware of the CNB note prior to being asked to prepare a statement for this suit, but she was aware of the "big note" and maintained accounting records for this debt. *Gillham v. Jenkins,* 1952 OK 150, 244 P.2d 291, 294 (in determining what was the intention of the parties, the subsequent acts of the parties may be considered when determining original intent).

¶ 14 Davis argues there is evidence to support his position that the CNB note was never discharged. He points to the "mortgage assignment" notation to the bank when Davis paid the outstanding balance of the CNB note, and the absence of any written release of the first mortgage. While the record may contain evidence favorable to both parties' positions, there was evidence from which the trial court, the fact finder in this case, could determine the "big note" discharged the previous obligation.

¶ 15 The trial court determined the "big note" was intended to replace the original indebtedness, the CNB note. In *Brady v. Interstate Mortgage Trust Co.,* the Oklahoma Supreme Court similarly found the parties intended the new notes and mortgage were to operate as payment for the previous note, satisfying the original indebtedness. *Brady v. Interstate Mortgage Trust Co.,* 1924 OK 13, 223 P. 145, 147. In so finding, the court said:

We do not think that the law will permit the plaintiff under any conditions to collect the original note while the plaintiff is still retaining the new notes executed by the defendants, which the defendants' testimony shows were intended to satisfy the old obligation.

A similar result is reached here. The "big note" has been reduced to judgment. Foreclosure on the CNB note and attempting to reduce that note to judgment as well, is counter to the rationale provided in *Brady*.

¶ 16 Davis' future advances argument is problematic because any advance that was provided by Davis was given only to Lance and Amanda Mason and not Sue Mason, so fewer than the original borrowers on the CNB note are implicated. The Missouri Court of Appeals answered a similar future advances question in *Maries Co. Bank v. Williams*, 989 S.W.2d 269 (Mo.App.1999).[2]

¶ 17 After reviewing similar decisions from Texas, Iowa, Michigan and Indiana, the Missouri court determined the future advance deed of trust did not secure the promissory note executed by fewer than all the makers.[3] This reasoning was based primarily upon the fact that the future advances instrument referred to the deed of trust applying to the debts of the "borrower," which the court

determined to be mother, son and wife. The future advances deed of trust referred to all three as the "borrower" and did not make reference to securing the debts of "either or any of them." The Missouri court found the second ($55,000) promissory note was not a future indebtedness of the "borrower," because it was not an obligation signed by all three of the parties to the original promissory note containing the future advances clause the bank was attempting to enforce.

¶ 18 Under this rationale, Davis cannot use the future advances clause contained in the CNB note, signed by Lance, Amanda and Sue Mason, for the purpose of foreclosing on Sue Mason's corresponding CNB property as a result of Lance and Amanda Mason's default on the "big note." Davis admitted the CNB obligation merged into the "big note." Therefore, Davis may not enforce a future advances clause against Sue Mason, who received no future advance and did not sign the "big note."

¶ 19 Davis would distinguish this case from *Williams*, arguing that he is not asking Sue Mason to pay more than the whole of the CNB obligation, not the hundreds of thousand of dollars that was loaned to Lance and Amanda Mason for the "big note." However, the fact remains that the "big note" obli-

2. In *Williams*, mother, conveyed sixty acres of land to herself, her son and the son's wife. The three executed a promissory note to the bank for approximately $100,000 and also executed a future advance deed of trust, covering the land and securing payment of what was described as the "secured debt." Thereafter, son and his wife signed another promissory note to the bank, $55,000 principal amount. Nothing in the $55,000 note indicated it was secured by the earlier deed of trust. Son and wife later divorced and wife quit claimed her interest in the land to mother and son. The bank eventually brought a declaratory judgment action to determine if the deed of trust, signed by mother, son and wife, secured payment of the $55,000.00 promissory note signed only by son and wife. The court held the future advance deed of trust did not secure the promissory note executed by fewer than all the makers of the putative security.

3. *Citizens Bank & Trust Co. of Washington v. Gibson*, 490 N.E.2d 728 (Ind.1986) (husband and wife executed a mortgage containing a future advances clause. Husband later defaulted on note which he alone had signed and bank sought

to foreclose under the mortgage that was signed by both. Court found the mortgage signed by husband and wife, which had used the word "borrowers" did not demonstrate an "unequivocal intent required to secure the several indebtedness of the parties."); *Bank of Woodson v. Hibbitts*, 626 S.W.2d 133 (Tex.App.1981) (issue arose whether deed of trust containing future advances clause, signed by three mortgagors would secure payment of later note signed by only one of those three. Court determined individual note not secured by the deed of trust signed by all three, as it was not within the reasonable contemplation of the parties at the time and did not purport to secure indebtedness owed by "either or any of them."); *Farmers Trust & Savings Bank v. Manning*, 311 N.W.2d 285 (Iowa 1981) (Iowa court noted future advances dragnet clauses are not favored and are strictly construed, concluded mortgage executed by husband and wife did not secure note signed only by husband.); *Holiday Inns, Inc. v. Susher–Schaefer Inv. Co.*, 77 Mich.App. 658, 259 N.W.2d 179 (1977) (court determined subsequent notes signed by only one of the co-mortgagors of the original mortgage containing the dragnet clause was not secured by the original mortgage).

gation into which the CNB obligation merged, by Davis' own admission, is not an agreement to which Sue Mason is a party.

■ ¶ 20 Davis also attempts to argue that the CNB note and the "big note" are simply two different and unrelated instruments. And as such, he is entitled to the presumption that the CNB obligation was not released and remains independently in full force and effect. *See Ambrister*, 168 P. at 233.[4] However, in making this argument, Davis disavows his admission that the obligations merged. Davis cannot maintain his position that two separate and distinct obligations still exist in light of the earlier admission.

¶ 21 We find no error in the trial court's determination that the obligations merged and were no longer separate or that the obligation was discharged when Davis paid off the loan in 2005. In light of the record presented, the court's findings are not against the clear weight of the evidence.

■ ¶ 22 After the trial court issued its ruling, Sue Mason filed a motion for attorney fees and costs, pursuant to 12 O.S.2001 § 936(A), asserting she was the prevailing party in a civil action to recover on a note.[5] She argues the existence of the statute obviates the American Rule and the language of the statute is mandatory, using the word "shall."

¶ 23 First, Davis counters that the American Rule should prevail here. Next, he argues Sue Mason did not actually recover on the note itself and therefore is not a party to whom § 936 would apply. Davis cites *Borst v. Bright Mortgage Co.*, 1991 OK 121, 824 P.2d 1102, for its statement that cancellation of a note due to unauthorized alteration is not equivalent to recovery on a note for purposes of § 936 attorney fees. Further, he argues Sue Mason contracted away any right she may have had to attorney fees, because the CNB instrument only refers to attorney fees to be paid to the mortgagee or lender by the debtor/borrower, and is silent regarding attorney fees that might be awarded a borrower. Finally, Davis maintains that Sue Mason did not properly support her fee motion, arguing that considerations under *Burk v. Oklahoma City* were not addressed, paralegal time was improperly billed, there were time entries in the fee request predating Sue Mason's joinder into the suit, and mileage reimbursements lacked supporting information and documentation. *Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659 (lists eight factors that can serve as a guide to determine the reasonableness of an attorney fee or contract).

¶ 24 Davis' attempt to portray Sue Mason as a party more in line with the analysis in *Borst* is misplaced. The Oklahoma Supreme Court said *Borst* was not a cause of action for recovery on a note according to its terms, but was an invocation of the borrower's remedy of cancellation. *Borst*, 824 P.2d at 1103. Davis' foreclosure cause of action is an action for recovery on the CNB note according to its terms. The *Borst* distinction does not apply. Davis also failed to demonstrate how a contract which is silent on the matter of attorney fees to a borrower relinquishes any right to such an award.

¶ 25 In *Staton v. Guarantee State Bank of Mangum*, the court noted:

> It is equally well settled, however, that section 936 would authorize attorney fees to the Statons if they had prevailed in the Bank's original foreclosure action.

---

4. A presumption exists that the note follows the mortgage. *Ambrister v. Dalton*, 168 P. at 233. The presumption essentially provides that "upon the execution of a new note or bond, the same security is available for its payment." 55 Am. Jur.2d Mortgages § 351; *Simpson v. Little Rock–North Water Dist. No. 18*, 191 Ark. 451, 86 S.W.2d 423 (Ark.1935).

5. § 936. Attorney fees taxed as costs in actions for labor or services rendered or on certain accounts, bills and contracts[:]

A. In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

*Staton,* 2008 OK CIV APP 18, ¶ 7, 178 P.3d 186, 188 (citing *Nat'l Educators Life Ins. Co. v. Apache Lanes, Inc.,* 1976 OK 121, 555 P.2d 600; *Welling v. Am. Roofing & Sheet Metal Co.,* 1980 OK 131, 617 P.2d 206). Sue Mason is the prevailing party in Davis' proceeding to foreclose on the CNB note and the Oklahoma Supreme Court has previously allowed the award of attorney fees to parties who successfully defended on a note or other applicable instrument. As the prevailing party, she is allowed a reasonable attorney fee to be determined upon remand to the trial court, at which time the court can fully consider whether or not Sue Mason's motion is adequately supported.

¶ 26 The judgment of the trial court is AFFIRMED IN PART, with respect to the trial court's determination that the CNB obligation and the "big note" merged, the CNB obligation was discharged, and Sue Mason owes Davis nothing further on the CNB obligation. The judgment of the trial court is REVERSED AND REMANDED with respect to the trial court's order that each party pay their own attorney fees.

¶ 27 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

MITCHELL, P.J., and BUETTNER, J., concur.